SARAH MATILDA PETERSON, APPELLANT, V. JOHN ALBERT BAUER ET AL., APPELLEES.

FILED FEBRUARY 6, 1909.   No. 15,833.

1. **Specific Performance: ORAL CONTRACT.** An oral contract to adopt the daughter of a stranger and leave her property by will may be enforced by specific performance, where she has fully performed her part and established the agreement by clear and satisfactory evidence.

2. ———: ———: EVIDENCE. In a suit for specific performance, direct evidence that a testator had made an oral contract to adopt the daughter of a stranger and leave her one-half of his estate at his death may be corroborated by his statements to witnesses of his purpose to do so.

3. Evidence: ANCIENT DOCUMENT. An unacknowledged ancient document coming from doubtful custody may be rejected as evidence, where a credible witness having knowledge of the handwriting of obligor condemned his signature as not genuine.

4. Specific Performance: ORAL CONTRACT: EVIDENCE. In a suit to enforce an oral contract to adopt the daughter of a stranger and leave her property by will, performance on part of plaintiff was properly shown by evidence that she became a member of testator's family when the contract was made, remained 18 years, performed dutifully every detail of her relation during that time, and left with his consent.

5. ———: ———. Whether an oral contract to devise realty shall be enforced by specific performance after it has been performed by plaintiff depends upon the facts and circumstances of each case.

APPEAL from the district court for Cass county: JOHN B. RAPER, JUDGE. *Reversed with directions.*

*T. J. Mahoney,* and *P. A. Wells,* for appellant.

*Matthew Gering, contra.*

ROSE, J.

This is a suit in equity to enforce an oral contract obligating John H. Bauer to adopt Sarah Matilda Peterson, and at his death leave her one-half of his estate for becoming a member of his family as his daughter and for performing the duties of that relation. The petition states that plaintiff's maiden name was Sarah Matilda Nix, that her mother died in October, 1871, and that the contract was made on plaintiff's behalf by her father, Samuel Nix, in February, 1872, before she was 9 years old, and that thereafter she was never in her father's custody or control, but in the performance of her contract was for 18 years continuously in the home of John H. Bauer, and at all times faithfully and dutifully bestowed upon him

and his wife the service, love and affection of a daughter. In her petition plaintiff further avers that John H. Bauer did not keep his promise to adopt her and leave her one-half of his estate, but at his death left a will by which he bequeathed his personalty to defendant, John Albert Bauer, and devised his realty to him for life, with the remainder in fee to his four minor children, Mabel, Grace, Gertrude and Hazel, defendants.   The mother of these children, Lizzie Bauer, wife of John Albert Bauer, and John Albert Bauer, administrator with the will annexed of the estate of John H. Bauer, deceased, are also defendants.   The answers of defendants admit that the realty of which John H. Bauer died seized was devised in the manner described in the petition, that defendants John Albert Bauer and Lizzie Bauer are husband and wife, and that Mabel, Grace, Gertrude and Hazel Bauer are their children.   Other averments of the petition are denied. Upon the trial below the district court found the issues in favor of defendants and dismissed the suit.   Plaintiff appeals.

Was this oral contract made?  Was it fully performed on part of plaintiff?   Was it violated by John H. Bauer after he had accepted for himself and family the services and devotion of plaintiff in the relation of daughter during 18 years?   If the record answers these questions in the affirmative by competent evidence which is clear and satisfactory, a court of equity should decree specific performance.   This doctrine has been settled in this state by repeated decisions, and the principal question for determination in this case is whether the making of the contract pleaded by plaintiff has been so established.

Plaintiff contends that the agreement was made during a conversation at the home of her father, who lived in a dugout in Cass county.   Three witnesses testified to what was said at the conversation, namely, Mrs. Mary J. Locke, Samuel Smith and George L. Berger.   On the issue as to the making of the contract the most direct and positive testimony was given by Mrs. Mary J. Locke, plaintiff's

oldest sister. At the time of the conversation she was a girl 19 years of age. Her mother died in October, 1871, and left her with the care of a number of children, among them plaintiff. Her father's name was Samuel Nix, who made the agreement with John H. Bauer on plaintiff's behalf. When the witness testified, she was a married woman 51 years old. She testified that she remembered the time plaintiff went to live in Bauers' family; that it was in February, 1872; that she remembered the circumstances of plaintiff's going from her father's home to Bauer's, and that Bauer came there, and that she heard a talk between her father and Bauer relative to plaintiff. In this connection the witness was asked: "What did Bauer say?" She answered: "Mr. Bauer said he would take my sister as his own child and care for her and school her, and at his death she should share equally with the boy." In reply to the question, "Share equally in what?" she answered: "His property. What he had." In reply to a further question as to what her father said after Bauer had made these statements, she replied: "He said she could go." On cross-examination she answered a question as to what else Bauer said at the conversation, as follows: "Mr. Bauer said he would like to take her as his own girl and care for her, and she should have half of what he had at his death, as his own child." This testimony was stated in different forms by the same witness. If she actually remembered the substance of what was said during the conversation, the fact would neither be suspicious nor remarkable. What was said about her sister would naturally make a deep impression on her mind. Her mother had only been dead a few months. She was the oldest sister and was left with the responsibility and care of the children. It would not be unusual if the severing of family ties and the terms upon which plaintiff was to leave made a lasting impression on the witness. Plaintiff did not want to go, and a little brother was sent along. Poverty does not make the breaking of the family circle a matter of indifference. Under

the circumstances narrated it would not be. too much to believe that the witness will not live long enough to forget what she in fact heard of the conversation relating to her little sister's future. There is no reasonable ground to question her remembrance of the substance of the conversation. If she told the truth, the oral contract was made, as pleaded in the petition. There is nothing in the record to discredit her as a witness. Her statements show evidence of candor and fairness, and under the circumstances disclosed by the record, there was nothing improbable in Bauer's making the promise to leave plaintiff one-half of his estate at his death. A number of witnesses testified that he wanted a little girl and that he was anxious to get one. Being anxious, he would quite likely offer inducements. Outside of the sentiment and comfort a daughter would bring to his home, he had reasons for anxiety. His wife was a large, corpulent woman, afflicted with rheumatism, and there is proof that, to some extent, she was incapacitated for active work when plaintiff became a member of his family. The making of the contract on the part of John H. Bauer was, therefore, altogether probable.

The testimony of Mary J. Locke, however, does not stand alone. Samuel Smith, who was present at the solicitation of John H. Bauer, also testified that he heard a conversation between Bauer and Nix at the time plaintiff went to live in the Bauer home; that he could not remember the words used, but that the conversation with Bauer was about the division of property, the taking of the girl, and providing for her as one of his own children. On cross-examination he was asked to state his recollection of the conversation, and said: "That it was, he wanted a girl and that he was to provide for the girl as his own." While this evidence of the witness Smith would not alone establish the making of the contract, his testimony corroborates that of Mary J. Locke. In addition, the record is full of the testimony of employees and neighbors of John H. Bauer and others, corroborating the di-

rect and positive evidence of Mary J. Locke, and showing that John H. Bauer understood the agreement to be as pleaded in the petition and that for many years he fully intended to keep his promise. By disinterested witnesses the following facts were shown: Plaintiff was in the Bauer family continuously for 18 years; was known in the neighborhood as "Tilly Bauer," where she was thought to be the adopted daughter of John H. Bauer and wife. They recognized her as their daughter and called her their "girl," "child" or "Tilly." She called them "father and mother" or "papa and mamma." They sent her to school and took her to church. At the age of 16 she was baptized in a church, in which John H. Bauer was deacon, in the name of "Sarah Matilda Bauer." They discussed her prospects of marriage, and objected to an unworthy suitor because plaintiff was a member of the family and would get her interest in their property. They petted her and expressed for her both pride and affection. In addition, John H. Bauer deeded her real estate worth $1,000 or more, and visited her frequently after she was married, and often took her little boy with him to call upon a neighbor by the name of Mrs. G. W. Rennie, who testified to what he said on one occasion, in the following language: "When he came up there, he said that he took Tilly when she was, I think, about seven years old, to raise her, and he had her adopted, and that she had always worked hard and had done, he said, really more for him than one of his own children could or would; and he said at his death she should come in and share half of everything that he had." Jacob Levy, a justice of the peace in South Omaha, who had formerly visited the home of John H. Bauer, as a peddler, in 1881, testified that both John H. Bauer and his wife told him that plaintiff would be the same as their own daughter, and that they had further said, "After we die she will get her interest in the property." Francis M. Young, a farmer living in the vicinity, stated that John H. Bauer told him that when he died plaintiff should have one-half of what he was worth, and that she should have

just as much as John Albert Bauer.   Eliza A. Johnson, a
witness who frequently called at the Bauer home, in testi-
fying, said:  "He always spoke of them as his two chil-
dren, his girl and his boy.   He was going to divide equally
with them; and, 'when he was laid away,' he spoke of her
as being cared for, and her being a little lady some day of
wealth and money.   He always said that."

Plaintiff adduced other evidence to the same effect, but
defendants insist that all the testimony of this character
is evidence only of a testamentary intention which could
be abandoned at any time, and does not prove the contract
pleaded by plaintiff.   It may be conceded that this testi-
mony tended to show a testamentary intention, but it also
corroborates the positive testimony of the witness, Mary
J. Locke, to the effect that John H. Bauer took plaintiff
into his home under a promise to adopt her, care for
her, and leave her one-half of his estate at his death.   The
corroborating proof also shows that John H. Bauer under-
stood the agreement to be as stated by Mary J. Locke, and
that for many years he intended to perform his part of it.

Defendants insist that substantially the same evidence
was before this court in *Peterson v. Estate of Bauer*, 76
Neb. 652, and that it was condemned therein as insuffi-
cient to show the making of the contract upon which plain-
tiff asks relief.   The answer to this contention appears in
an opinion on rehearing, reported in 76 Neb. 661.

To refute the testimony on behalf of plaintiff as to the
terms of the contract, defendants introduced the following
document: "Louisville, Cass County, Neb., March the
8th A. D., 1873.   This is to certify that I, Samuel Nix,
do hereby state that I am satisfied for John Bauer to have
my little girl Sarah Matilda Nix and adopt her in his
family, as his own child, or bound, as he may think best.
Said John Bauer is to have control of her until she is
eighteen years of age, for which he agreed to do a good
part by her, and give her reasonable good schooling and
give her a good outfit for housekeeping.   Sarah Matilda
was born Sept. the 17th A. D. 1864.   Samuel Nix.   John

Bauer." This paper was admitted in evidence under the rule permitting ancient documents, which are more than 30 years old, to be received in evidence without proof of execution, where they are shown to have come from proper custody. Plaintiff argues that this document should be rejected for the reason it is not shown to have come from proper custody, and also insists that she introduced evidence to show that the signature of Samuel Nix was not genuine, thereby necessitating proof of execution. Defendant John Albert Bauer testified that he found the instrument among his father's papers in the drawer of a small stand in his own bedroom about two weeks after his father's death, and that the stand had been in the room of witness probably a year. The character of the other papers in the drawer was not shown. The witness did not state that his father kept other valuable papers in the drawer. It is shown without contradiction that John H. Bauer did not leave his will, a valuable paper, in the drawer. At the time of testator's death the will was in a safe in possession of Stephen Hulfish, at Wabash. Besides, the evidence is conclusive that John Albert Bauer was not free from artifice in his relations with his father. In testifying he admitted that he once threatened suicide, bought poison, pretended to take it, and allowed a physician to be called, for the purpose of influencing his father to do better by him. The circumstances indicate a doubtful custody. In addition there was no attempt to prove that the signature of Samuel Nix was genuine. On the other hand Francis M. Young testified that he knew Samuel Nix, had transacted business with him, had seen him write, had received a letter from him, and that from these sources of knowledge the name of Samuel Nix on the ancient document was not in his handwriting. Under such circumstances it would be carrying the ancient-document rule too far to consider the paper as authentic without some proof of execution on the part of Samuel Nix. If the ancient document were admitted without question, however, it would not necessarily defeat

plaintiff's recovery. If genuine, it permitted the child to be taken on one or the other of two options. The first option authorized plaintiff's adoption, and the second permitted John H. Bauer to receive her as a bound girl. The facts already narrated show that plaintiff's status in the Bauer family was not that of a bound girl. Plaintiff was treated as an equal, and her standing in the family was that of a daughter. Bauer, therefore, did not accept or act under the second option. With the second option and the qualifying language eliminated by Bauer himself, nothing remained of the instrument except his permission to adopt plaintiff. This permission would have enabled Bauer to carry out his part of the agreement. The only option which Bauer recognized as binding upon him does not contradict the terms of the oral contract pleaded in the petition.

Defendants also direct attention to the testimony of George L. Berger to contradict that of Mary J. Locke. His version of the conversation was stated in one of his answers as follows: "Mr. Bauer said that he wanted to try the girl—take her home and see if he liked her and wanted to keep her. He told Mr. Nix if he kept the girl he would give her a reasonable amount of schooling, clothe her, and if she stayed with him until she married or was of age, he would give her a reasonable outfit to go to keeping house." The witness Berger was present at the conversation by request of John H. Bauer, and was a half or full brother of defendant John Albert Bauer, there being a conflict in the evidence as to their relationship. On the question in issue Berger's evidence contradicts that of the other two witnesses present, and is also at variance with later statements of John H. Bauer himself, that at his death plaintiff should have one-half of his estate. More than 30 years after the conversation Berger testified to details of no importance in such a glib and reckless manner as to discredit his testimony. He had no extraordinary interest or obligation to arrest his attention or impress his memory. The language in which he at-

tempts to reproduce what John H. Bauer said bears a remarkable resemblance to the style accredited by defendants to Samuel Nix in the foregoing ancient document, which was not in existence at the time of the conversation. This similarity in language, after the lapse of more than 30 years, can be accounted for on the supposition that the witness refreshed his memory from the ancient document, instead of stating his recollection of what he actually heard. His testimony does not discredit that of Mary J. Locke.

It is also argued by defendants that John H. Bauer's reputation for honesty and fair dealing, and the solemn will and testament by which he excluded plaintiff from sharing his estate at his death, ought to have great weight in the determination of this case. The provisions of testator's will were at variance with his statements and intentions as expressed by him to many witnesses during the 18 years plaintiff lived in the Bauer family. Moreover, the record furnishes no reason to question the honesty or truthfulness of plaintiff, who was permitted to testify to John H. Bauer's statements of his own obligations and intentions in 1890, and to show they were not then as expressed in his will. The opportunity for plaintiff to testify to such facts was given when defendants introduced proof that he deeded her real estate worth $1,000 or more. In relating the circumstances of the transfer plaintiff testified that John H. Bauer in substance said he had given her the property because he was having to spend much on Albert; was going to take him to Canada; wanted plaintiff to stay on the farm until he returned. Albert had gotten himself and Bauer into so much trouble, he was having to dispose of his property and go away, and wanted her to have the property transferred; mentioned the terms on which she was taken into the family; would give her half of what he had at his death. This testimony and the direct and corroborating evidence, to the effect that John H. Bauer took plaintiff into his family under a promise to leave her one-half of his estate at his death,

cannot be overturned by his reputation for honesty, nor by the solemn instrument through which he violated his promise, after having received under it for himself, his invalid wife and John Albert Bauer the benefit and comfort of plaintiff's faithful service and affection during 18 years of the best part of her life.

Defendants further argue that plaintiff has not fully performed her part of the oral contract pleaded in her petition. Before she was 9 years old she was taken from her father, brothers and sisters to the home of John H. Bauer and thereafter was a member of his household continuously for 18 years. When she arrived the family consisted of John H. Bauer, his wife, defendant John Albert Bauer and plaintiff. There is proof that, to some extent, Mrs. Bauer was incapacitated for work at the time plaintiff first went to the Bauer home. Five years later Mrs. Bauer was practically an invalid, requiring a great deal of care and attention during the rest of her life. She died August 7, 1886, and during those years plaintiff waited on her and at times was her nurse. She dressed her, watched by her at night, rubbed her for rheumatism, and otherwise ministered to her wants. In addition, she was housekeeper and cook for the family, washed and ironed, did chores on the farm, milked cows in summer and winter, churned, took care of the chickens, worked in the garden, and performed these and other services and duties cheerfully. Witnesses testified that Mrs. Bauer had praised plaintiff's conduct and work, and that John H. Bauer repeatedly boasted to the neighbors and others of her being a good girl, and of her taking care of the home, and of her discharging all her duties faithfully and cheerfully. No witness for any of the parties testified to a complaint on the part of either John H. Bauer or his wife as to the behavior of plaintiff or of the manner in which she fulfilled her obligations to them. Plaintiff's relation with the Bauer family terminated after John Albert Bauer came home with a wife. Of this incident a witness said that John H. Bauer made a statement to the

effect plaintiff should leave if John Albert Bauer returned after an absence in Canada, and that she could not be blamed for refusing to live in the house with him and his wife. Plaintiff remained in the Bauer family a number of years after Mrs. Bauer's death, 9 years longer than she could be bound by the contract made by her father in her behalf, and 9 years after she had reached the age when a parent could retain the custody and control of a daughter against her will. When plaintiff severed her connection with the Bauer family her right to do so was recognized by John H. Bauer. The contention of defendants that the contract pleaded in the petition has not been fully performed by plaintiff is not sustained by the record. That John H. Bauer broke his promise to leave plaintiff at his death one-half of his estate, after having received the benefit of performance on her part, is also established by the evidence.

Reference cannot be made to all the evidence without making the opinion too long, but each item of proof on both sides has been examined in its relation to every part of the record. The character and effect of the evidence described will not furnish a measure for other cases. The direct evidence of the making of the contract might prove wholly insufficient when given by other witnesses in a case presenting different corroborating facts and circumstances. *Kofka v. Rosicky,* 41 Neb. 328. Most of the testimony was submitted in the form of depositions, and for that reason the trial court was deprived of the usual advantage over this court in determining the credibility of witnesses.

The conclusion is that the oral contract was made as pleaded in the petition, that it has been fully performed by plaintiff, and violated by defendants' testator. The judgment of the district court is therefore reversed and the cause remanded to the court below, with directions to enter a decree in favor of plaintiff for the specific performance of her contract as prayed in her petition.

REVERSED.

FAWCETT and ROOT, JJ., having been of counsel in the case, did not sit.