C. J. RICHARDS, Appellant, v. MARY A. WATTS, Appellee.

**Evidence:**   CREDIBILITY AND WEIGHT: DIRECTION OF VERDICT.   The credibility of a witness and the weight to be given his evidence are questions for the jury, and a verdict ought not to be directed by the court on the ground that his examination discloses a defective memory, or that he is seemingly untruthful.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

THURSDAY, JUNE 9, 1910.

THE opinion states the case.—Reversed.

*S. B. Allen,* for appellant.

*J. M. Parsons,* for appellee.

WEAVER, J.—The petition alleges in substance that the defendant, Mary A. Watts, aiding and abetting one Marion Comegys, stole and carried away from the home of the plaintiff the sum of $746 in gold and silver coin. The answer denies the charge. The testimony offered tends to show that plaintiff is a coal miner living in a suburb of the city of Des Moines and at the time in question had accumulated about $930 in gold and silver. He was distrustful of banks of deposit and kept his treasure stored in a fruit jar concealed in or about his bed. Defendant lived in the same neighborhood and in her employ at this time was one Marion Comegys, a boy fifteen years of age. The fact that plaintiff had a quantity of money was known to one or two of his neighors, but except in the story related by the boy, there is no direct testimony that defendant had such knowledge. On July 2, 1908, plaintiff's wife having been temporarily absent during the earlier part of the day and plaintiff himself being away at the mine, it was discovered on their return that a large part of the coin had been abstracted. It was learned that Marion Comegys had been seen by one or more of the neighbors in the vicinity of plaintiff's house at or about the time the money was supposed to have been stolen, and suspicion was aroused that he was the guilty party. Upon being arrested, he confessed to having taken the money, but claimed that he took it at the direction and instigation of the defendant to whom he had delivered the booty. As a witness in this case, he swears that defendant told him there was money in plaintiff's house and to go over there and hunt until he found it. When he had

consented, he says she gave him a key with which he unlocked the door of plaintiff's house, found the fruit jar in or under the bed, and took out a part of the money and went with it to the defendant, who, on ascertaining that he had not taken it all, directed him to return and get the remainder. He thereupon returned to plaintiff's house and took more of the money, but left a remnant in the jar. He further says that on taking the money to the defendant she placed it in a baking powder can and buried it in or under one of the mangers in the cow barn, and that from the moneys so received she gave him one or two gold pieces. On the following day she went with him to the city and bought him a suit of clothes and pair of shoes. On Monday an officer went to the home of defendant for the purpose of interviewing or arresting the boy, and according to his story, defendant had him conceal himself until the officer had left. Upon search of the premises no money was found, but at the place under the manger where the boy claims defendant concealed the money there was found an excavation substantially such as he described. Cross-examination of this witness developed some apparent inconsistencies in his story and he quite frequently professed forgetfulness as to some of the material details. The record as made by him seems to indicate that he is not of a high order of intelligence, but his story as a whole is neither so illogical or unnatural as to stamp him as a mental incompetent. His testimony also finds some support in the testimony of others, indicating that defendant when approached with reference to the transaction denied knowing the name of the boy, and that she admitted having concealed him from the officer and in other ways sought to prevent his prosecution.

At the close of the plaintiff's testimony the defendant moved the court as follows (we quote from the record): "Mr. Parsons: At the close of the testimony for the plaintiff, and after the plaintiff had rested, the defendant moves

the court to strike from the record all the testimony of witness, Marion Comegys, on the ground that the examination of the said Marion Comegys develops that he is of so defective memory that his testimony is unworthy of belief and no credence can be put on it; second, that the examination of the said Marion Comegys discloses to the court that he is so absolutely untruthful that his testimony can not be considered in a court of justice; third, that the testimony of the plaintiff's other witnesses upon every point that touches the said Marion Comegys absolutely disputes his testimony. The defendant also moves the court to instruct the jury to return a verdict for the defendant on the ground that there is not sufficient evidence to sustain a verdict; second, that it would be the duty of the court if a verdict were rendered against the plaintiff in this case to set it aside." Upon the submission of this motion the court made the following order: "The evidence of the boy will be stricken from the record and the motion to direct a verdict will be sustained." A subsequent motion by the plaintiff for a new trial was overruled, and judgment upon the directed verdict was entered against plaintiff for costs, and he appeals.

It is unnecessary to enter upon any discussion of this case. The bare statement of the facts demonstrates the erroneous character of the judgment. That experienced and eminent counsel should present such a motion, and that the learned trial court should sustain it is explainable only upon the theory that they assumed the record thus made would never be reviewed upon appeal and that by this short and unconventional device a possible injustice might be prevented. It ought not to be necessary to say that the credibility of the witness and the value of his testimony were matters for the jury alone. Counsel may have believed him utterly unworthy of credence and the court may have fully sympathized with that view, nevertheless, it was the right of the plaintiff to have the judg-

ment of the jury thereon.    To sustain the judgment in
this case would be to establish a precedent destructive of
the fundamental principles underlying our jury system.
No argument can add emphasis to a self-evident propo-
sition.

A new trial must be ordered, and for that purpose
the judgment of the district court is *reversed.*