HELMER JOHNSON, APPELLEE, V. MATHILDA RISEBERG ET AL., APPELLANTS.

FILED NOVEMBER 14, 1911.  No. 16,816.

1. Specific Performance: AGREEMENT TO DEVISE: EVIDENCE. Clear, direct and uncontradicted testimony given by a disinterested witness that a woman, having no lineal descendants, orally promised her stepson that if he would remain on her farm, live in her house during her natural life, and treat her as a son should treat his mother, he should have the farm at her death, corroborated by the evidence of disinterested witnesses concerning her declaration to the effect that her stepson had an interest in the farm and would have it after her death, if believed by the court, will sustain a finding that the contract was made.

2. Statute of Frauds: PART PERFORMANCE. Acts of performance relied on to remove the bar of the statute of frauds to an oral contract to transfer the title to real estate must be unequivocal, and of such a nature that, if stated, an inference will reasonably arise that an agreement of some nature existed between the parties with reference to the real estate.

3. Specific Performance: REMEDIES. If the acts of performance relate to service of such character that their value cannot be estimated by a pecuniary standard, the claimant does not have an adequate remedy in pressing a demand for a money judgment for a breach of the contract.

APPEAL from the district court for Boone county: JAMES N. PAUL, JUDGE. *Affirmed.*

*F. D. Williams, H. C. Vail* and *J. H. Leahy,* for appellants.

*C. E. Spear, F. J. Mack* and *Albert & Wagner, contra.*

Root, J.

This is an action for specific performance of an alleged oral contract for the transfer of title to a farm in Boone county. The plaintiff prevailed, and the defendants appeal.

As we understand the argument of defendants' counsel, their contention is that the evidence is insufficient to establish a contract, or one which may not be satisfied by the payment of money, or to prove such performance as will remove the bar of the statute of frauds. There is no contention in the answer or in the arguments that an oral contract to sell or convey this real estate might not be enforced under some circumstances, so we shall approach the case in the attitude assumed by counsel for both sides.

There is no evidence directly contradicting that adduced to prove the statements made by Mrs. Johnson and relied on to establish the contract, and but little proof to discredit by inference the evidence that those statements were made, nor is there any conflict in the evidence concerning the acts of performance. The plaintiff's mother died after his birth in 1875; in 1881 his father, after marrying Gustafva Bergstrom, entered as a federal homestead the land in dispute, but subsequently, within four years, departed this life, leaving the plaintiff, two other children and his widow him surviving. She subsequently availed herself of the federal statute, and in 1889 secured a patent for the land in controversy. There are no children the issue of the second marriage, nor did Mrs. Johnson have any lineal descendants.

In 1885 or 1886 the widow sent a letter to a married sister residing in Chicago to induce her to come to

Nebraska and live with Mrs. Johnson, but the request was denied. Thereupon Mrs. Johnson, in substance, said to the plaintiff and his brother that, since her relatives would not help them, they must help themselves; that the boys needed assistance at the time, and later she would need help; that if they would stay with her and treat her like a mother she would treat them as her sons, and whatever property she had they "will get when I leave." The boys remained with her, improving and cultivating the farm and caring for her while she cared for them, until Richard, the elder, was about to marry in 1897. At this time the plaintiff was 22 years of age, and Richard three years older. The plaintiff and Richard intended to leave the farm, but when Mrs. Johnson was informed of that intention she stated, in substance, to her stepsons that she did not care about Richard leaving, but that she wanted the plaintiff to remain, look after the farm, and treat her as a mother, and if he would do so she would treat him as a son, "and whatever I have at the time of my death you are going to get it." Thereupon the plaintiff abandoned his purpose to leave, and remained with his stepmother until her death in 1909. The plaintiff has remained unmarried, and the evidence is uncontradicted that, although Mrs. Johnson was an irritable scold, he treated her with kindness and respect.

In corroboration of the direct and certain testimony of Richard Johnson concerning the promise, the plaintiff offered his neighbors' testimony relative to her declarations, many of which may be considered testamentary in character, yet some of them indicating her understanding that Helmer had a present interest in the land. In substance, she said to Mrs. Hildebrand that she wanted Helmer to have her property; to Mr. Nelson, about a year before her death, she said, in response to his solicitation that she purchase lightning rods for the buildings on the farm, that she did not believe in them, "but Helmer could put them up if he wanted to, that it would be his place anyway after she died;" to Mr. Postle, an insurance

agent, she said in 1898, in answer to his inquiry concern-
ing whom the loss should be payable to if the property
insured should be destroyed by fire: "The property is in
my name, but as soon as I get through with it it will go
to Helmer." She said "Helmer was caring for her, and
living with her, and when she died the property would
go to him because he was taking care of it. * * * She
says, 'The property is mine, but it is Helmer's when I
die.'" To Milford Nelson, Mrs. Johnson said, about a
month before her decease: "When she was done with her
property, it would belong to Helmer." There is also
proof of her declarations made shortly before her death
to the effect that she intended to give the farm to her
relatives, and that Helmer had been paid for everything
he had done for her. It will be noticed that the state-
ments were made to Postle the year the contract was
made, and recognize most clearly his interest in the land,
and that the declarations evidencing testamentary intent,
rather than an admission of his absolute right, were made
many years thereafter.

Parents, or those sustaining the relation of parents,
not infrequently regard contracts with their children less
seriously than if made with third persons, and it is not
unnatural that Mrs. Johnson, as the farm increased many
fold in value, and her stepson by industry and frugality
acquired other valuable real estate, considered that he had
enough of this world's goods, and that the thought should
come to her that her relatives by consanguinity should
receive some benefit from her hands. The fact that Mrs.
Johnson had no lineal descendants and that her collateral
kindred refused to come to her assistance at the time her
husband died, and that so recent as 1897 the land was
not worth to exceed $1,600, tends to prove that the
promise was natural and reasonable.

The evidence to sustain the plaintiff's allegations that
the contract was made is as certain and convincing as
was the evidence adduced in *Peterson v. Bauer,* 83 Neb.
405, in *Hespin v. Wendeln,* 85 Neb. 172, or in *Cobb v.*

*Macfarland,* 87 Neb. 408. It is argued, however, that a letter written by the plaintiff to Mrs. Riseberg a few days after Mrs. Johnson's death is an admission that he had no contract with his stepmother. In that communication the plaintiff in effect states that, since the deceased left no will, her relatives were her heirs; that, by the time his claim for caring for her shall have been satisfied, there will be little left of the estate, and that he will pay them each $3.50 for their interests therein. The plaintiff explains that he understood when the letter was written that, since there was no written evidence of the contract, he could not enforce it, but must depend on a money demand against the dead woman's estate to recompense him for his performance of the oral contract. If this case depended upon the plaintiff's evidence for its support, the defendants' argument would be persuasive; but the proof to establish the promise is furnished by other and disinterested witnesses, upon whose statements this letter reflects little, if any, discredit. The plaintiff's explanation is reasonable and in accordance with the common experience of men.

It is further argued that the acts of performance are not solely referable to the contract, and hence are insufficient to take it without the statute of frauds. No attempt was made during the trial to compel the plaintiff to marshal his evidence so as to first prove performance, so that the district judge considered all of the evidence to satisfy himself whether there was proof of an act unequivocally referring to and resulting from the agreement. The act need not necessarily refer to the terms of the contract, but, as stated by the Master of the Rolls in *Frame v. Dawson,* 14 Ves. Jr. (Eng.) 385: "The principle of the cases is that the act must be of such a nature that, if stated, it would of itself infer the existence. of some agreement; and then parol evidence is admitted to show what the agreement is." While the evidence of performance is not so definite as we should prefer, yet we think that the proof that, when Richard departed from

his stepmother's premises, Helmer, then only a year past his majority, remained and continued unmarried to reside with his stepmother, caring for her in sickness and in health notwithstanding her nagging and ill temper, establishes the existence of facts which we may in reason refer to something more than the relation of stepmother and stepson, or of landlady and tenant, and that an inference fairly arises that this childless woman had made some arrangements with her stepson whereby he acquired an interest in her estate.

Upon the entire record, there is proof of the contract and of such performance as to remove the bar of the statute of frauds. We do not think a money judgment will compensate the plaintiff for a breach of his contract. We cannot well measure by any pecuniary standard the value of his services, nor the value of the privileges and opportunities he renounced in the faith that his stepmother would convey or devise to him the farm in question.

Some questions of practice are argued, but they are immaterial for a consideration of the case on its merits, and in nowise prejudiced the defendants.

The judgment of the district court is therefore

AFFIRMED.

REESE, C. J., dissenting.

While it is true that the homestead was taken by plaintiff's father in the first instance, and by reason of his death the patent was issued to his widow, and that the farm was improved by the joint labors of the decedent and her stepsons—probably largely by those of the stepsons—yet the title was in the widow, and it was her right to make such disposition of the land as she might desire, or none at all. She had the right to make a contract, upon sufficient consideration, to convey it to plaintiff, if she so desired. However, it strikes me that no such contract was ever made. After making the declaration attributed to her, that whatever she had at the time of

her death plaintiff was going to get, plaintiff continued to reside on the farm as a renter, taking two-thirds of the products, the widow, his stepmother, reserving one-third, and providing him a home as a member of the family, as she had done during practically his whole life. So far as is shown, this relation between them continued until the time of her death. I can find no promise ever made on her part to convey the land to plaintiff, either by will or deed. I can find no evidence that plaintiff ever relied on a supposed or believed promise. I think the most that can be said is that the decedent expressed a desire and willingness that after her decease plaintiff should have the land, but she took no steps to render such purpose effective. I do not believe that such desire or willingness was based upon any legal or binding contract. I do not base this dissent upon the provisions of the statute of frauds, but upon my belief that no contract was proved, nor was there any consideration therefor, had one been proved. I need not refer to our uniform holdings, in line with all authorities, that in an action for specific performance the proof of the contract must be clear and convincing, as that is the settled law.

LETTON, J., concurs in this dissent.