WILHELM LABS, APPELLANT, v. CHARLES LABS ET AL., APPELLEES.

FILED NOVEMBER 13, 1912.   No. 16,795.

**Wills:** TESTAMENTARY AGREEMENT: SPECIFIC PERFORMANCE: EVIDENCE. Where it is sought to establish an oral agreement to make a testamentary disposition of property and to set aside the provisions of a will in so far as they conflict with said alleged

agreement, the proof to establish the existence of such oral agreement must be clear, convincing and satisfactory, in order to overcome the presumption that the testator acted in good faith in the execution of the will.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*Charles Haffke* and *Thomas F. Brady*, for appellant.

*T. J. Mahoney* and *J. A. C. Kennedy, contra.*

LETTON, J.

This is an action for the specific performance of an alleged parol agreement between the plaintiff and his father, Ferdinand Labs, now deceased, that the father would make a testamentary disposition of 80 acres of land in his favor, and praying that a will executed by the father, wherein the defendants are bequeathed certain sums of money which by the will are made a charge upon the land in controversy, be set aside, that a deed executed by the father in his lifetime conveying the same premises to Ferdinand F. Labs be also set aside, and the plaintiff's title to the real estate be quieted. The district court found for the defendants and dismissed the suit. Plaintiff bases his right to recover upon the proposition that the facts in the case bring it within the rule of *Kofka v. Rosicky,* 41 Neb. 328; *Harrison v. Harrison,* 80 Neb. 103; *Peterson v. Bauer,* 83 Neb. 405; *Hespin v. Wendeln,* 85 Neb. 172; *O'Connor v. Waters,* 88 Neb. 224. Defendants assert that the evidence is wholly insufficient to establish the alleged contract. A number of questions of law as to the admission and rejection of evidence are argued in the briefs; but, owing to the view that we take with respect to the evidence, we are satisfied that, even if the district court had ruled otherwise as to the admissibility of this testimony, we would have been compelled on a view of the whole case to reach the same result. For this reason, these questions will not be considered.

Ferdinand Labs came to this country from Germany

more than 30 years ago. When he first came he became a tenant farmer in Douglas county, but finally purchased 160 acres of land, which at the time of his death was encumbered to the extent of $2,700. The land was then worth from $65 to $70 an acre. He made the will which is attacked in March, 1907, and died in July, 1909. He was the father of eight children, one of whom is the plaintiff. The others are the defendants in this case. The will, after providing for the payment of his debts, left $400 for a suitable monument and for the care of his grave. To the plaintiff, his son William, he left $1,000; to each of his sons Charles and August he left $500; to each of his three daughters he left $400; to his son Albert he devised the east one-half of the home farm of 160 acres, subject to half of the mortgage indebtedness, and charged with the payment of one-half of the debts, charges and legacies; and to his son Ferdinand F. Labs he devised the west 80 acres, subject to incumbrance, and charged to the same extent. In the interim between the making of the will and his death, Ferdinand Labs conveyed by deed to his sons Albert and Ferdinand F. the same premises which the will provided should be devised to them, subject to the same charges, and also subject to a life estate in the grantor. At the same time each son leased his portion of the land from the father, agreeing to pay $200 a year and taxes upon the property as rent for each 80-acre tract.

Coming, now, to the evidence upon which plaintiff relies: His testimony is to the effect that, when he was about 22 or 23 years of age, he and his parents went for a visit to the home of a man named Lucht, who lived near Millard; that he then heard a conversation between his father and Lucht, in the course of which Lucht asked his father what he would give William if he stayed at home, and that the father told Lucht he was going to give him an 80-acre tract if he worked for him until he got married. Plaintiff testified, further, that he continued to live upon the farm and work for his father until he was 33 years old; that his mother died about 6 years ago, and that about that time he

heard a conversation between Mr. Gehrke, the Lutheran minister, and his father; that Gehrke said, " 'You better let him have the eighty now to build a house on,' and he says, 'No, you can build that after I am dead.' " He further testifies, "I asked father for wages, and he said, 'No,' he would not give me wages, but he would give me an eighty after he is dead, and that is the reason Mr. Gehrke came in there and wanted to settle between us two." On cross-examination he says that he claimed his father owed him wages from the time he was 21 years old up to that time; that he took no part in the conversation with Gehrke, and that he does not know how Gehrke came to know of the dispute; that he did not ask Gehrke to come and settle it. Other witnesses testify to statements by the father that he intended to give plaintiff 80 acres of land when William was married or that William should have 80 acres when he died, but their testimony is indefinite and does not appear to relate to any definite contract made between the father and son. On the other hand, Gehrke denies that such a conversation as William relates ever took place with the father. On cross-examination he states that, about the time spoken of by William, he had a conversation with the mother, who said that they planned to give William an eighty, but there was nothing said about any agreement having been made to that effect. Mr. Lucht was also unable to remember any such conversation as was testified to by plaintiff, and said positively none such took place.

Some other facts relating to the usage of the family and the manner in which each child was started in life by the parents cast some light upon the problem. Charles Labs was married at the age of 27. Before that time his father received the benefit of his work. Upon his marriage his father gave him $500, and by the will he is to receive $500 more, half of which is charged upon the 80 acres in controversy. August was married at the age of 22. Until that time his father received his wages. Under the will he was to receive $500, one-half of which is charged upon

this eighty. Each of the daughters went out at service, brought her wages home for the use of the family, and each at marriage received a few household goods. Under the will each will receive $400. Albert was 39 years old when the trial was had. He was married, but worked upon the home place until his father died. He received some personal property upon his marriage, and, as before stated, has received the east one-half of the quarter section, subject to the debts and charges. His inheritance will be the same as specified in the will, even if the plaintiff should recover; while Ferdinand, who turned over to the family the fruit of his labor until he was 25 years of age, at which time he was married and received some personal property, will, if the plaintiff is successful, lose his land, and will also lose $350 which he has already paid in cash in part satisfaction of the incumbrance existing upon the land at his father's death. If plaintiff prevails, one-half of all the legacies charged upon the land of Ferdinand must fail, and Ferdinand himself will lose the land. A reading of the whole record convinces us that Ferdinand Labs, who was apparently a hard-working, God-fearing, and just man, endeavored to discharge his duties to his family impartially and with justice. His conduct in this respect, subsequent to the time of the alleged making of a contract with plaintiff, seems inconsistent with plaintiff's theory.

Considering all the testimony in the record with relation to the history of the family, the conduct of each of the children with reference to the father and mother, the time each worked upon the farm, the provision made for each of them by the father when he or she married and set up housekeeping for himself or herself, and the provisions made in the will for the distribution of the property, in connection with the evidence in behalf of plaintiff, we are convinced that the plaintiff has not sustained the burden of proof by clear, convincing and satisfactory evidence, such as is required in cases of this nature.

The judgment of the district court is

AFFIRMED.