MAY PHELPS, APPELLANT, V. METROPOLITAN UTILITIES DISTRICT, APPELLEE.

FILED OCTOBER 17, 1930. No. 27303.

*Gray & Brumbaugh,* for appellant.

*Dana B. Van Dusen* and *Hasselquist & Chew, contra.*

Heard before ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ.

EBERLY, J.

This is an action for personal injuries brought by appellant, hereinafter designated as plaintiff, against the appellee, hereinafter designated as defendant, in the district court for Douglas county. Issues were joined, and trial to a jury. At the conclusion of the evidence of both parties, the motion of defendant that the court instruct the jury to return a verdict in its favor, or that the jury be discharged and judgment be rendered in its favor by the court, was sustained, and thereupon the jury were discharged and the court upon consideration of the evidence found in favor of the defendant and dismissed the action. From the judgment rendered in favor of defendant and the overruling of her motion for new trial plaintiff appeals.

So far as the determinative issues in the case are concerned, they may be said to be the issues joined by the allegations contained in plaintiff's petition that defendant in its work of lowering water mains excavated a hole two by four feet in size down to the main, and in refilling negligently refilled said hole without tamping or wetting same down so as to prevent settling of soil replaced, all in violation of ordinance No. 13208, as a result of which plaintiff fell and was injured; that, having failed to refill said hole and having left the soil replaced in a loose and unsafe condition, defendant failed to provide lights, signals or guards to warn plaintiff of the dangerous condition, as a result of which plaintiff received the injuries complained of. The fact that there was an excavation made of a nature substantially as alleged in plaintiff's petition by some one; that plaintiff stepped into the loose soil of said excavation and was caused thereby to fall, breaking the external malleolus of the left foot and thereby suffered serious injury, is fairly established by the evidence.

The question presented by the proof is, however: Has the plaintiff established by her evidence the existence of

facts from which it may be fairly inferred that the hole in question was excavated by the servants of the defendant? And important as relating to the identification of the hole excavated and its connection with the defendant's servants, according to the view of defendant, is its location with reference to the water main belonging to the defendant.

The scene of the accident was situated in Curtis avenue in or near the intersection of that avenue with Thirty-eighth street in the city of Omaha. It is quite evident that the district court directed a verdict on the basis that the defendant had established by practically uncontradicted evidence the location of the curb line at the scene of the accident and its situation with reference to the water main there situated; that plaintiff's witnesses having located the excavation causing the injury north of the "curb line," and according to the witnesses for the defendant there being some four or five feet intervening between the water main at this point and the north curb line, the excavation in question could not have caused the injury. We think the court erred in accepting the facts enumerated as substantially established for the basis of his action.

It seems conceded by all parties to this litigation that at the time of the accident there was, so far as shown by the record, no "curb line" in any manner indicated on the ground. Indeed, it appears that it had not been definitely marked or established long after that event. Speaking of a date some two months prior to April, 1929, almost two years after the occurrence of the accident, Mr. Galloway, one of defendant's witnesses, says: "Q. Now, there is no curb there now, is there? A. No. Q. So, of course, your statement that the curb line was so far from the water main was just an approximation, wasn't it? A. Yes. Q. Of where the curb line might be? A. Yes." Nevertheless, all plaintiff's witnesses were cross-examined, over objections, with reference to a "curb line," the location of which was not in any manner indicated by reference to visible objects, nor in any other manner definitely located on the terrain and which had no possible existence save and ex-

cept as a mental concept. Not only cross-examination of plaintiff's witnesses was related to this subject, but defendant's testimony was also directed to the matter of this "curb line" that had no actual existence in fact. Exhibit 3, a purported map of the *locus in quo* which appears in the record, was presented to each of defendant's witnesses who testified with reference to the scene of the accident. Each of these persons stated that it was a correct representation thereof. It may be said, in passing, that this map discloses no "curb line" whatever. But defendant's witness Galloway says on this subject: "Q. Can you tell the jury where the approximate curb line would be in reference to the water main? A. Well, I would say it would be about five feet south of the south sidewalk line—south of the south edge of the north walk. Q. You mean that the curb would be five feet south of the south edge of the walk? A. Yes; on the north side of the street. Q. And that your water main would be five feet south of the curb line? A. Yes, sir." So, also, Mr. Edling, the field engineer of the defendant, in his testimony says that exhibit 3 is correct, and further testifies, "assuming that there was a curb there," which in fact never had an existence: "Q. Approximately how close, then, is the water main to the curb line? A. Four feet." There is here a discrepancy of approximately one foot. But these figures do not relate to actual distances between definite objects, but to what the actual distance was between the location of the water main and where, according to the opinion of the witnesses, the "curb line" should have been, had there been one. There is nothing in the record which in any manner discloses where, in the opinion of plaintiff's witnesses, this curb line should have been located, but the defendant proceeds upon the theory that the plaintiff's and defendant's witnesses were in substantial agreement on this important matter.

In this connection the correctness of exhibit 3 becomes important. Is it in truth a correct representation of the terrain upon which the accident occurred? Inherent within itself we find evidence which conclusively establishes

the negative. Assuming that the distances as legibly marked on this map control over the results of the actual application of the scale appearing thereon, these figures indicate that there are 24 feet between the water main and the "north property line" adjacent thereto. In this connection it is a conceded fact in the record that this water main is $8\frac{1}{2}$ feet north of the center of Curtis avenue. This distance in connection with the distances appearing on the map, exhibit 3, supports the conclusion that the north half of Curtis avenue is then $32\frac{1}{2}$ feet in width. This would indicate a 65 foot street, and it is quite apparent from the other portions of the record that Curtis avenue, in this vicinity at least, is but 60 feet in width. Then, again, on the basis of a 60 foot street, with the water main situated $8\frac{1}{2}$ feet north of the center thereof, it could be no more than $21\frac{1}{2}$ feet from the water main to the "north property line." The distance of 24 feet as indicated on exhibit 3 is therefore palpably erroneous.

It must be conceded also that defendant's evidence relating to the relative situation of the water main, and the point where the curb line ought to be, is entirely based upon the correctness of exhibit 3. We are not unmindful that "a certain permissible error" may exist in surveying and mapping, and that any casual error not exceeding this in extent would not be subject to any particular criticism. However, considering the nature of the work before us as reflected by exhibit 3, and assuming that an error represented by the fraction 1/1500 might not be deemed material, we find that the fraction representing the error appearing in exhibit 3 is more than 1/9. *Quære*: Can such errors be disregarded in view of the use made of and the reliance on exhibit 3 by the defendant?

However, without further discussion of the accuracy and force of defendant's evidence, it may be stated that, in view of the nature of the proceedings before us for review, the plaintiff is entitled to have as conclusively established every point favorable to her which her evidence tends to establish; and, conversely, a trial court is not justified in directing a verdict for the defendant unless, con-

sidering all facts favorable to the plaintiff conclusively established so far as the plaintiff's evidence tends to prove them and including all inferences properly deducible therefrom, it is able to say as a matter of law that the plaintiff is without ground upon which to recover. And for this purpose it is not necessary that the proof in the record be made by direct evidence, as these facts may be made to appear either directly or circumstantially. *Lammers v. Boehmer,* 62 Neb. 159; *Central Nat. Bank v. Ericson,* 92 Neb. 396; *Shawnee State Bank v. Vansyckle,* 109 Neb. 86; *Curtice Co. v. Estate of Jones,* 111 Neb. 166; *Stohlman v. Davis,* 117 Neb. 178.

At least one of plaintiff's witnesses testified positively that he, in conjunction with his brother, some time prior to the accident in controversy herein, excavated a trench for the water pipe connecting this identical water main with his mother's house in the near vicinity of the scene of the accident. Thus, he had a decided reason to know the location of this water main in Curtis avenue without reference to any mythical "curb line" that had no actual existence. This witness also testified positively that prior to the accident a hole, the exact location of which is in controversy, was dug down to this water main, and the depth thereof measured by a man who thereafter rejoined a group of men, admittedly the employees of the defendant, at their work on Curtis avenue near the scene of the accident. This witness further testified that this man had been digging with and as a part of the gang who were then and there lowering the water mains and that the location of this hole was the place where the plaintiff was injured. This, in view of the surrounding facts and circumstances, sustains plaintiff's theory that the excavation thus made was the excavation that caused plaintiff's injury. It is substantial evidence at least which would sustain a verdict if believed, and while this witness' cross-examination as disclosed in the record may have a tendency to detract from the force of his statements, it could and did accomplish no other purpose than affect his credibility. Credibility of witnesses is a matter which forms

no element of the question involved in the motion to instruct a verdict such as was presented and sustained in the instant case.

Indeed, from a careful reading of the record as an entirety, we are impressed with the view that we have a situation here presented to which the following quoted words employed by Weaver, J., in *Richards v. Watts,* 147 Ia. 557, are singularly appropriate and applicable: "The bare statement of the facts demonstrates the erroneous character of the judgment. * * * It ought not to be necessary to say that the credibility of the witness and the value of his testimony were matters for the jury alone. Counsel may have believed him utterly unworthy of credence and the court may have fully sympathized with that view, nevertheless, it was the right of the plaintiff to have the judgment of the jury thereon. To sustain the judgment in this case would be to establish a precedent destructive of the fundamental principles underlying our jury system. No argument can add emphasis to a self-evident proposition."

It may be said in passing, however, that the attorney now representing the appellee in this court did not participate in any manner in the trial in the district court, and is in no degree responsible for the situation disclosed by the record before us.

It follows therefore that the action of the trial court in this instant case was not justified by the record on which it is based. Accordingly, the judgment of the district court is reversed and the cause remanded for further proceedings in accord with this opinion.

REVERSED.