IN RE ESTATE OF CHRISTIAN M. SKADE.
HANNAH EDWARDS, APPELLANT, V. ANNA D. YORK ET AL., APPELLEES.

283 N. W. 851

FILED FEBRUARY 10, 1939.   No. 30452.

R. E. Bannister and Herbert W. Baird, for appellant.

Halligan, McIntosh & Halligan, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

Rose, J.

In the county court of Dawson county, Hannah Edwards presented a claim of $11,800 against the estate of her deceased father, Christian M. Skade, for services performed by her from January 1, 1904, to January 30, 1937, under an agreement by him to pay her therefor; also a claim for an unpaid loan of $500 from her to her father April 2, 1934; total, $12,300.

Anna D. York and Elsa M. Rickey, daughters of decedent and sisters of claimant, contestants, objected to the allowance of the claims, pleading *nil debet*; no such agreement; attempt to annul duly probated will of decedent; statute of limitations. The county court disallowed the claims. From a dismissal of the proceeding claimant appealed to the district court, where there was a trial on the issues raised by the pleadings in the county court. At the close of the testimony on behalf of claimant, the district court sustained a motion by contestants to direct a verdict in their favor for insufficiency of the evidence to prove the claims. From the resulting judgment in favor of contestants, claimant appealed to the supreme court.

The vital issue on appeal is the sufficiency of the evidence to make a case for the determination of the jury on the traversed plea for compensation for services performed by claimant under an agreement by her father to pay her for them. The problem requires observance of this rule: In reviewing a direction to the jury at the close of plaintiff's evidence to return a verdict in favor of defendant, the appellate court will assume the existence of all material facts which competent evidence on behalf of plaintiff establishes or tends to prove and give him the benefit of proper inferences from such facts. *Central Nat. Bank v. Ericson*, 92 Neb. 396, 138 N. W. 563; *O'Hara v. Hines*, 108 Neb. 74, 187 N. W. 643; *Diller v. Chicago, B. & Q. R. Co.*, 119 Neb. 494, 229 N. W. 888; *Phelps v. Metropolitan Utilities District*, 120 Neb. 337, 232 N. W. 785; *State v. Havel*, 120 Neb. 832, 235 N. W. 584; *In re Estate of Hoagland*, 126 Neb. 377, 253 N. W. 416; *Zielinski v. Dolan*, 127 Neb. 153, 254 N. W.

695; *Andrews v. Clapper,* 133 Neb. 110, 274 N. W. 209; *Zimmer v. Brandon,* 134 Neb. 311, 278 N. W. 502.

The evidence establishes or tends to prove the following facts: Hannah Edwards, claimant, is the daughter of Christian M. Skade and wife, who had two other daughters, Anna D. York and Elsa M. Rickey, and two sons, Mats Skade and Henry C. Skade. Hannah's husband died January 24, 1904, leaving her with their only child, a girl three years of age. After the funeral, the father of Hannah took her and her child to his "home place," a 160-acre farm in Dawson county. When they arrived, there were present herself and her daughter, her father and mother, her sister Elsa, her brothers Mats and Henry, and Henry's wife who had become a mother the day before. For two weeks Hannah acted in the capacity of accoucheuse besides the performance of other services in her father's home. Henry's wife remained there until the next fall.

For 33 years Hannah, without receiving any compensation, in money, worked in the home of her father continuously, except at intervals when temporarily absent or prevented by illness. In the meantime the residence of the senior Skade was first on the south place, later on a 160-acre farm a short distance farther north, and finally on a lot in Cozad, where a house was constructed for the third home. At these homes roomers and boarders were kept at different times for compensation and visiting relatives were frequently entertained at each of those places.

The health and strength of Hannah's mother had been somewhat impaired by sunstroke and other afflictions and she did not perform many of the tasks incident to farm and home life. The more difficult services were performed by Hannah, who cooked, cleaned house, did the family washing, painted buildings, husked corn, milked cows, pumped water for hogs, took care of chickens, fed calves, worked in the garden. Services like those indicated were performed by Hannah on both farms. She put the house on the north farm in order for occupancy by the Skade family. She papered the Skade house in Cozad.

Hannah was not a dependent in 1904 when her father took her and her little daughter into his home, nor afterwards. She had been emancipated by marriage, age and separation from former relations. She had the income from a 40-acre tract of irrigated land which yielded her an annual income varying from $200 to $1,500. With her earning capacity for work she had the means of livelihood. She clothed herself and daughter until the latter became a self-supporting teacher.

In addition to the natural impulse of the father to care for his daughter after the death of her husband in 1904, there were inducements to take her into his home. He was then in need of a midwife for a daughter-in-law and also in need of a housemaid. Hannah acted in both capacities.

If there were any agreement to pay and receive compensation, performance on the part of the daughter is fully shown. In addition to facts already stated, the father himself, according to the testimony of a disinterested witness, said that Hannah could do a man's work; did not see how they could have gotten along without her; had done more for him than all the rest of them—referring to members of his family.

Is there evidence from which a jury could properly find that an agreement for pay was made? Hannah was not permitted to testify to transactions between herself and her deceased father. This handicap increased the difficulty of proving an oral contract for compensation. Resort to circumstances was necessary. A witness who testified with apparent candor, who had been a teacher, who was a neighbor and friend of the elder Skade, said the latter told him that Hannah had promised to stay with him and his wife and take care of them; that "he had always promised to pay her;" that he "intended to leave it in a will that she was to get it, but he was informed the will could be broken and he had decided she should just hand in for her labor for the time she had worked for them;" that he said to the witness: "You might have to repeat this some time."

The circumstances; the promise of Hannah to stay with her father and mother and take care of them; the promise of the father to pay for the services; the fidelity with which Hannah kept her promise for a third of a century, and the satisfaction she gave him by the faithful performance of duties—all tend to prove a mutual agreement for compensation, unless there is something in the record to overturn the case thus made.

A copy of the duly-probated will of the senior Skade is in the record. It is dated June 12, 1936, and willed in equal shares to the three daughters of testator the estate of which he died seised, except household goods and chattels bequeathed to Hannah. By will the two sons got nothing, because one of the farms had been sold and they had received proceeds of the sale amounting to $21,000.

The will made no provision for compensating Hannah for her labor, and it is argued in support of the peremptory instruction that the allowance of her claim would consume the estate and defeat the devise to the daughters Anna and Elsa. There was a formidable argument in support of this proposition, but it does not seem to be conclusive on the record for review. It has long been the law in Nebraska that the making of a will which violates unperformed obligations of testator under valid oral contract, after full performance by the other party, does not destroy the contract. *Peterson v. Bauer,* 83 Neb. 405, 119 N. W. 764; *Hespin v. Wendeln,* 85 Neb. 172, 122 N. W. 852; *O'Connor v. Waters,* 88 Neb. 224, 129 N. W. 261; *Johnson v. Riseberg,* 90 Neb. 217, 133 N. W. 183; *Brown v. Webster,* 90 Neb. 591, 134 N. W. 185; *Labs v. Labs,* 92 Neb. 378, 138 N. W. 561; *Kofka v. Rosicky,* 41 Neb. 328, 59 N. W. 788; *Damkroeger v. James,* 95 Neb. 784, 146 N. W. 936; *Lacey v. Zeigler,* 98 Neb. 380, 152 N. W. 792. Evidence that Hannah and her father entered into an oral agreement for services and compensation and proper inferences from the evidential facts outlined lead to the conclusion that any presumption of gratuitous labor by daughter to father was overthrown.

Another presumption is invoked to disprove a debt for

labor. The evidence shows that Hannah borrowed from her mother or father $1,500 in 1928, when a large part of the claim in issue was unpaid. In this situation the contestants state their position as follows:

"It is contrary to the experience and observation of mankind that one to whom another is indebted will borrow money from his debtor upon a promise to repay him, and at the same time make no mention of a debt claimed to be due from the debtor. A presumption arises from such a transaction that the lender is not indebted to the borrower in any sum."

The position thus taken is untenable for the reason that the presumption is overthrown by the evidence. The relation between a parent and an emancipated child does not prevent contractual obligations of one to the other. Hannah and her father were competent contracting parties. There was believable evidence of an agreement between them for labor and pay. A time for payment was not fixed. The amount of compensation was not mentioned. The period of service had not ended when the loan was made. While living in her father's home and working for him she had means for self-support. The evidence is that she did not borrow the money for her own benefit but devoted it to her daughter and son-in-law to aid them in procuring a home in Cozad, where they were engaged in the practice of dentistry. They paid the borrowed money back to her in instalments and she discharged her 1,500-dollar debt to her father—all ordinary business transactions. The better view of the entire record is that the presumptions upon which contestants rely are overthrown by the evidence.

The claim for compensation is not outlawed as pleaded by contestants. The agreement was a continuing one which did not expire until the death of the parents, when the statute of limitations began to run. *Phifer v. Estate of Phifer,* 112 Neb. 327, 199 N. W. 511.

The claim for an unpaid loan of $500 owing by testator to his daughter Hannah is not supported by the evidence. He received from her by check $500, but, for anything

appearing in the record, the transaction may have been payment of a debt owing by her to him.

For the error of the trial court in taking the case from the jury on the issue of compensation for services, the judgment below is reversed and the cause remanded for further proceedings.

REVERSED.