FRANK DIEZ ET AL., APPELLANTS, V. EARL P. ROSICKY, ADMINISTRATOR, ET AL., APPELLEES.

16 N. W. 2d 155

FILED OCTOBER 20, 1944. No. 31771.

*W. A. Meserve,* for appellants.

*W. Keith Peterson* and *W. L. Brennan, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is a suit in equity in which plaintiffs seek to com-
pel specific performance of an oral contract alleged to have
been entered into by Wenzl Diez, now deceased, and his
wife, Matilda Diez, by the terms of which said Matilda
Diez is alleged to have agreed to devise and bequeath one-
half of the estate of her husband existing at her death and
one-half of her own estate to the plaintiffs, who are the
brothers and children of deceased sisters of Wenzl Diez.
The trial court denied the relief prayed for and plaintiffs
appeal.

The record shows that Wenzl Diez and Matilda Diez were
married on January 14, 1893, and lived together as hus-
band and wife until the death of Wenzl Diez on November
25, 1933. Matilda Diez never remarried, and died on De-
cember 9, 1942. Both parties died without issue. On April
25, 1914, Wenzl Diez executed a will by which his entire
estate was left to his wife. This will was probated after
the death of Wenzl Diez and all of his property was as-
signed to and became the property of Matilda Diez. Ma-
tilda Diez died intestate, leaving her mother, Theresia Kur-
ka, as her sole heir. Theresia Kurka passed away on Jan-
uary 12, 1943, leaving a will by which she left her estate
to her living sons and daughters and to the children of a
deceased daughter. The plaintiffs are the brothers and
children of three deceased sisters of Wenzl Diez. The de-
fendants are the sons, daughters and the children of a de-
ceased daughter of Theresia Kurka; Earl P. Rosicky, ad-
ministrator of the estate of Matilda Diez; and William J.
Svoboda, administrator with will annexed of the estate of
Theresia Kurka. The property involved was stipulated to
be of the value of $55,000.

Plaintiffs contend that at the time Wenzl Diez made his
will on April 25, 1914, it was pursuant to an agreement be-
tween his wife and himself that in case she survived him

she would will and bequeath one-half of his estate existing at the time of his death and one-half of her estate existing at the time of her death to his brothers and sisters and the children of any deceased brothers and sisters, and pursuant to the further promise that if he survived her he would will and bequeath one-half of his estate to her heirs. The question presented is the sufficiency of the evidence to sustain the agreement.

The plaintiff produced the testimony of one R. H. Harris, then a banker at Lynch, Nebraska, who stated that between March 15 and March 25, 1931, he had a conversation with Wenzl Diez in the bank in substance as follows: "I asked him if he had made a will, and he said he had, willing all his property, both personal and real to Matilda Diez, that was his wife; then he wanted to know if I considered that a sufficient will. I asked him if his will contained those statements, he said it did not, that it was a personal agreement between he and her, that in case he died before she did then she was to make a will, willing half of the property that he had at his death—that they were possessed of at that time, to his side of the family.". There was other evidence to the effect that Mrs. Matilda Diez said in her lifetime that "they were both agreed that after her death that half of the property should go to his side and the other half to her side; * * * ." There was other evidence that Wenzl Diez wanted one-half of the property to go to the Diez side and one-half to his wife's side of the family. There is other evidence that Matilda Diez said both sides would be provided for and that she was going to make a will.

Defendants' evidence, outside of that which is purely negative in character, is that of persons who had visited with Wenzl Diez with reference to his property, during which conversations he made statements that "I have fixed it so Matilda has her money to do with as she pleases;" "I don't want the Van Burens to have it;" "and after their death he didn't care a darn which way it went" and "when she got through with it she could do as she damned pleased."

It is the rule in this state that an oral agreement to devise or bequeath property is void and unenforceable as being within the statute of frauds, unless there has been part performance by the promisee which is solely referable to the contract sought to be established and not such as might be referable to any other contract or situation. *Taylor v. Clark,* 143 Neb. 563, 13 N. W. 2d 621. It is evident that the making of a will whereby all of testator's property is left to his wife is not of itself evidence of the existence of a contract between the testator and his wife. Nor is it evidence of part performance of a contract in the absence of other evidence indicating clearly that it was made pursuant to such an agreement. We do not think the record shows by clear, definite, satisfactory and unequivocal evidence that a contract was made. Declarations of intention or of the wishes of the parties do not tend to support any such conclusion. Neither will an alleged agreement made after the execution of the will afford a valid consideration for any such an agreement.

In *Overlander v. Ware,* 102 Neb. 216, 166 N. W. 611, this court said: "In considering cases of this character, where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satisfactory, and unequivocal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfactory evidence, they are not enforceable unless there has been such performance as the law requires. The thing done, constituting performance, must be such as is referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that the claimant would not have done unless on account of the agreement and with the direct view to its performance—so that nonperformance by the other party would amount to fraud upon him."

The evidence was conflicting to such an extent that we cannot say that a contract was established by clear, satisfactory and unequivocal evidence. But irrespective of this

conclusion, plaintiffs' case must fail for the reason that it is not shown that the part performance relied on imports the existence of the pleaded agreement and no other. The record shows nothing which could be interpreted as part performance of the alleged contract, other than the fact that Wenzl Diez did make a will, leaving all his property to his wife. There is nothing unusual about a husband leaving all his property to his wife, in fact it is more or less the usual thing that is done. To meet the requirements of the rule, the act alleged to constitute part performance must be such that its existence can be accounted for only by the existence of the pleaded agreement. It must refer to, result from, or be in pursuance of the oral contract sought to be enforced, and not from some other relation. The evidence produced does not meet this test.

We are of the opinion therefore that the trial court was right in holding that the evidence fails to establish a contract outside the scope of the statute of frauds.

AFFIRMED.