ALVA KIMMEL ET AL., APPELLANTS, v. RICHARD ROBERTS ET AL., APPELLEES.

136 N. W. 2d 208

Filed July 9, 1965. No. 35905.

Edward J. Robins, for appellants.

Richards, Yost & Schafersman, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

Plaintiffs brought this suit in the district court for Dodge County for the specific performance of an oral agreement by Frank Middaugh and Elizabeth Middaugh to execute reciprocal and irrevocable wills. The trial court found the evidence insufficient to sustain an enforcible contract. The plaintiffs have appealed.

Frank Middaugh and Elizabeth Middaugh were husband and wife. No children were born to them. They had acquired property, as stated in plaintiffs' brief, of the approximate value of $250,000, some of which was held individually and some in joint tenancy. In 1952 they concluded to make a testamentary disposition of their

property. On August 1, 1952, at the same time and place, they executed reciprocal wills, identical in content except for the change in names of the parties and the appropriate use of the words "husband" and "wife" therein. Each of the two wills was executed by the two parties for the benefit of the other and each provided that the estate of the survivor would go to the nieces and nephews of both, share and share alike.

Frank Middaugh died on February 13, 1953, and his reciprocal will dated August 1, 1952, was duly probated. Elizabeth Middaugh became the beneficiary of the estate under the terms of the reciprocal will of Frank Middaugh, which had never been changed. On November 17, 1960, Elizabeth Middaugh executed another will by which she materially changed the distribution of her estate to the benefit of her nieces and nephews and to the detriment of the nieces and nephews of Frank Middaugh. The petition also alleges that after the death of Frank Middaugh, she, by joint tenancy, survivorship, and the changing of the beneficiaries of insurance funds, effectually transferred a large portion of her property to her nephews and nieces to the exclusion of those of her deceased husband, Frank Middaugh. Elizabeth Middaugh died on February 9, 1964, her death giving rise to the present litigation.

The plaintiffs are the nieces and nephews of Frank Middaugh. The defendants are the three surviving nephews and the three children of a deceased niece of Elizabeth Middaugh. It is the contention of the plaintiffs that the reciprocal wills executed by Frank Middaugh and Elizabeth Middaugh, the oral evidence adduced, and the part performance of the oral contract constitute a binding and enforcible agreement which became irrevocable upon the death of Frank Middaugh. The defendants contend that a valid enforcible contract has not been established and that the will of Elizabeth Middaugh, executed on November 17, 1960, is a valid will which controls the disposition of her property.

There is evidence in the record supporting an oral agreement that the property of Frank and Elizabeth Middaugh upon the death of the survivor was to go to the nieces and nephews of both. The reciprocal wills contained no provision indicating an intent that such wills were to be irrevocable. Any relief to be granted the plaintiffs is therefore dependent upon the establishment of the oral agreement as binding and enforcible. It is a fundamental rule that in a suit to enforce an oral agreement embraced within the statute of frauds, acts of part performance must be shown sufficient to remove the bar of that statute. The making of reciprocal wills is not alone sufficient to establish the irrevocability of such wills. Eagan v. Hall, 159 Neb. 537, 68 N. W. 2d 147; Wyrick v. Wyrick, 162 Neb. 105, 75 N. W. 2d 376. In a suit to enforce an oral agreement within the statute of frauds on the ground of part performance, the part performance must refer to, result from, or be in pursuance of the oral contract sought to be enforced, and not from some other relation. To sustain such a contract the evidence must be clear, satisfactory, and unequivocal. Diez v. Rosicky, 145 Neb. 242, 16 N. W. 2d 155; Overlander v. Ware, 102 Neb. 216, 166 N. W. 611.

The evidence shows that upon the death of Frank Middaugh, his reciprocal will executed on August 1, 1952, was probated and Elizabeth Middaugh took all his property given her by the will pursuant to the terms of the will. It is contended that the acceptance of the property by Elizabeth Middaugh under the terms of the will was a part performance of the oral agreement and had the effect of barring the application of the statute of frauds. Such evidence will not sustain a finding of part performance of the oral contract. The giving of a husband's property to his wife by will is a matter of common occurrence in the relationship of husband and wife and it cannot be said that it refers to, results from, or is in pursuance of the oral contract here sought to be enforced. Eagan v. Hall, *supra*. It lacks the essential

element of being referable solely to the oral agreement sought to be established and does not therefore constitute such proof of part performance of the oral contract as to remove the bar of the statute of frauds. Taylor v. Clark, on rehearing, 143 Neb. 563, 13 N. W. 2d 621; Diez v. Rosicky, *supra;* Lunkwitz v. Guffey, 150 Neb. 247, 34 N. W. 2d 256; Eagan v. Hall, *supra;* Wyrick v. Wyrick, *supra.*

The rule applicable here is summarized in Overlander v. Ware, *supra;* as follows: "In considering cases of this character, where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satis- factory and unequivocal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfac- tory evidence, they are not enforceable unless there has been such performance as the law requires. The thing done, constituting performance, must be such as is refer- able solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that the claimant would not have done unless on account of the agreement and with the direct view to its performance—so that nonperformance by the other party would amount to fraud upon him."

Although there is evidence of an oral agreement, the effect of which is to make the reciprocal wills irre- vocable, there is no proof of part performance sufficient to remove the bar of the statute of frauds.

The plaintiffs rely upon Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. N. S. 1196, and Mack v. Swanson, 140 Neb. 295, 299 N. W. 543, in support of their position. These two cases have been cited to this court previously as holding for a different application of the controlling rule than as applied herein. Eagan v. Hall, *supra.*

In the case of Brown v. Webster, *supra;* the court held that the petition stated a cause of action; and re-

versed the judgment of the district court in dismissing the action as not stating a cause of action. The court, as pointed out in the dissenting opinion, assumed that the evidence was before the court and that no defense is available thereto, even though one might have been pleaded and proved. We think the court purported to anticipate the evidence and make a determination thereof rather than to limit itself to the sufficiency of the petition to state a cause of action. Such a discussion of the evidentiary factors was outside the issue before the court and constitutes pure dicta. Nevertheless, the obiter dictum contained in the opinion lacks the force of an adjudication. Notwithstanding this fact, the opinion is relied upon from time to time to sustain oral contracts embraced within the statute of frauds which are not in compliance with the law of this state as declared by the cases cited in disposing of the present litigation. As a clarification of the applicable rules relating to the enforcibility of oral contracts embraced within the statute of frauds, we disavow and reject the statements in the opinion which are in conflict with the rules announced in the present opinion.

In Mack v. Swanson, *supra*, each of the reciprocal wills by the husband and wife gave a life estate by the maker of each will to the other and provided further "and should either of us pass away, whatever of the residue of all properties of every kind and nature shall revert to the heirs of both then living, share and share alike." The opinion holds: "The mutual promises of the parties amount to sufficient considerations. Performance of the oral contract by both parties during the remainder of the husband's life and the mutual writings pursuant to such oral contract clear the transactions from the statute of frauds." The acts of performance relied upon are not discussed in the opinion, nor are the mutual writings, referred to, set out. The only authority cited is Brown v. Webster, *supra*. This situation leaves the case in a questionable status as an authority in the case

before us. Giving it a most favorable construction, we must assume that the evidence supported the findings made and that they are not in conflict with the established rules set forth in this opinion dealing with part performance as validating oral contracts embraced within the statute of frauds.

We conclude that the oral agreement sought to be enforced is barred by the statute of frauds as the trial court found. The judgment of the district court is affirmed.

AFFIRMED.

McCOWN, J., concurring.

I concur generally in the result reached by the majority opinion, but I am convinced that the result is correct for another basic reason. The majority opinion proceeds on the assumption that there is evidence in the record supporting an oral agreement that the property of Frank and Elizabeth Middaugh, upon the death of the survivor, was to go to the nieces and nephews of both. An analysis of the record discloses that on the very first conference of the decedents with their attorney, they said: "* * * we have decided how we want to divide our property, but we think we should have a joint will. So that it will be the same for both of us no matter which one of us dies first." Their attorney then advised them: "I am opposed to joint wills for the reason that it ties you up and forfeits the wife getting the benefit of the marital deductions. * * * You can accomplish the same results by making two identical wills and put the property the way you want it that way." Separate wills were drawn for the decedents and there is not one word of testimony at any point that the decedents disregarded or intended to override the advice of their attorney, nor that they at any time intended to proceed with a so-called contractual arrangement, regardless of their attorney's advice. At the time of execution of the separate wills, each party stated that his or her will was just the way he or she wanted it.

In order to assume that the parties were going ahead with a contractual irrevocable testamentary plan, even if they had one originally, you have to assume that they intended to disregard their attorney's advice and that they planned to avoid the federal estate tax laws, neither of which, I think, are reasonable assumptions.

In a modern day in which husbands and wives are much more frequently making testamentary plans together, it is disregarding the plain facts of life to treat oral conversation between spouses that they have "agreed" on a testamentary plan or plans, as constituting the evidence of an oral, binding contractual obligation. A court should not introduce or imply the existence of a mercenary element in the execution of wills containing reciprocal provisions between husband and wife bound by close ties of affection, except upon clear affirmative proof that it was present within the understanding of all parties. Testimony which establishes only that wills containing reciprocal provisions were the result of the union of life and purpose of the testators, and not of a negotiation between them in which each testator represented his or her own interest, is not sufficient to establish a contract for the execution of the wills. The discussion by two persons bound to each other by the closest ties of affection concerning the disposition of their property, resulting in separate wills by which the property of each is disposed of in the same manner, affords no grounds for an inference that either undertook or exacted a legal obligation. This is glaringly apparent when they are dealing with federal estate taxes and joint testamentary planning.

The cases are absolutely clear in all states that I have been able to find that the degree of proof required to establish a contract for the execution of wills reciprocal in their bequests must be "clear, unambiguous, and convincing," "definite, certain, clear and convincing," "very convincing," "clear, definite, satisfactory and unequivocal," and in some instances, "most indisputable." Some

authorities go so far as to require proof beyond reasonable doubt or legitimate controversy to establish a contract for the execution of wills containing reciprocal bequests and bequests to third persons effective in enjoyment upon the death of the surviving testator, especially where the parties were husband and wife. 57 Am. Jur., Wills, § 728, p. 494.

The rule which I think applies here is set out in 57 Am. Jur., Wills, § 733, p. 499: "Parol proof offered to establish a contract for the execution of wills containing reciprocal bequests must be of the most satisfactory character, especially where the enforcement of the agreement will divert the title from the heirs at law of a decedent. Clearly the court cannot imply an agreement for the execution of separate wills containing reciprocal provisions and identical or similar provisions for the benefit of a third person where the circumstances are inconclusive and permit an inference either way. It has been held that in the absence of an express agreement for the execution of separate wills with reciprocal provisions and similar provisions for the benefit of a third person, the evidence of the surrounding circumstances must be such as imperatively to compel the conclusion that the testators intended and undertook to bind themselves and their estate irrevocably in the event of the prior death of one, in order to suffice as proof of a contract between them." See, also, Annotation, 169 A. L. R. 66, 67.

It is strange indeed that we place so many technical requirements and formalities about the execution of a will and its amendment or revocation and yet, in certain circumstances, permit mere oral statements to be somehow wrapped in a contractual package which will supplant and override the will itself. An attorney has a difficult enough time in preparing joint testamentary plans, drafting proper and effective wills, and complying with all the formalities of their execution. To make his memory of the oral conversations of the testators the

determining factor with respect to establishing some overriding contractual arrangement places an almost impossible burden upon him. If the facts of the so-called "contract" here were actually sufficient to constitute a binding oral contract to make irrevocable reciprocal wills, the careful draftsman would have to place in every reciprocal will a specific negation of any oral contractual agreement.

To demonstrate the reason for the concern with a reliance only upon the statute of frauds in this case, it can be pointed out that upon the recommendation of the attorney drawing the wills, certain property transfers were recommended. The record does not show when, whether, or to what extent, they were made. If a transfer had been made after the execution of the wills and in accordance with the so-called "agreement," such a transfer could be treated as part performance sufficient to take the "contract" out of the statute of frauds. Such transfers of property in pursuance of a testamentary plan are not only occasionally pursued in federal estate and gift tax planning, but are quite commonly pursued.

Insofar as the statute of frauds is concerned, it would seem preferable to adopt a rule that the execution of a will, and leaving it unrevoked until death, is not of itself sufficient to take an alleged irrevocable oral agreement for reciprocal wills between husband and wife out of the operation of the statute, unless the will on its face specifically refers to the oral contract.

The facts in this case are definitely insufficient to establish any oral contract to make irrevocable reciprocal wills.

I am authorized to state that Carter, J., is in agreement with this concurrence, but that the statute of frauds being a bar, a holding of the insufficiency of the oral agreement is not necessary to the disposition of the case.

BOSLAUGH, J., concurring.

I concur in the result reached in this case upon the ground that the evidence was not sufficient to establish

an oral contract to make the reciprocal wills irrevocable.

SPENCER, J., dissenting.

I respectfully dissent from the majority opinion herein for the reason that I think the opinion, in attempting to overrule long-settled authority, is bringing confusion to our law.

A reading of the wills herein convinces me that they were intended to serve but one purpose, the one contended for by the appellants. The wills were the same except for the change of names. The opinion could give an erroneous impression when it says that Elizabeth Middaugh took all of Frank's property given her by the will, pursuant to the terms of the will. Frank Middaugh's will, which was admitted to probate March 16, 1953, gave his motor vehicles, household goods, furniture, and personal belongings to his wife, Elizabeth Middaugh. The balance of his estate was given to two trustees, with directions to pay the income to Elizabeth during her lifetime. The will then, so far as here material, provided:

"E. If my said wife predeceases me or, having survived me, dies, my said trustee or their successors shall distribute said trust property and any other property which I might own at the time of my death to my nephews and nieces and to the nephews and nieces of my wife, Elizabeth Middaugh, share and share alike. It is my intention that the division of my property is to be made to the nephews and nieces of my said wife and myself who are living at the date of the death of my wife or to the issue of any deceased nephew or niece. The issue of any deceased nephew and niece of mine or my wife's shall take the share the parent would have taken if living. It is my intention that there shall be no vesting of this remainder in any nephew or niece of my wife or of myself until the date of the death of my wife and until said date the interest of said nephew or niece shall not be subject to alienation of any kind and no notices in connection with the administration of said trust shall be

required to be given to any nephew or *or* niece or to any survivor of any nephew or niece."

Elizabeth received the income so long as she lived. At her death, the trustees distributed Frank's estate to the nieces and nephews of Frank and Elizabeth, in accordance with the provisions of the will.

It is of interest to note that as a part of the transaction resulting in the wills, on the advice of counsel, the property of the parties, some of which was held jointly and some of which was held separately, was divided equally between the parties and the reciprocal wills were made.

The opinion holds: "Although there is evidence of an oral agreement, the effect of which is to make the reciprocal wills irrevocable, there is no proof of part performance sufficient to remove the bar of the statute of frauds."

I suggest Frank completely performed and that Elizabeth accepted the benefits of that performance until her death. That performance included the provision made for her nieces and nephews in consideration of a like promise she made for Frank's nieces and nephews. The division of the property between the parties as a part of the contract in the reciprocal wills providing for the conveyance of the remainder interest in Frank's property to Elizabeth's nieces and nephews certainly indicates to me a substantial part performance within the ambit of our cases.

This case is in no respect analogous to Eagan v. Hall, 159 Neb. 537, 68 N. W. 2d 147. In the Eagan case, the property was conveyed to the spouse with full power to sell and convey, with only the balance remaining undisposed of at the death of the survivor going to the heirs. Clearly that will did not necessarily purport an agreement. The instant case is entirely different. Here the wife receives only the income, with no right to encroach on principal, which is held by trustees, and one-

half of the corpus at her death vests in her own nieces and nephews.

Wyrick v. Wyrick, 162 Neb. 105, 75 N. W. 2d 376, involved a joint will which contained the provision: " 'In the event the one surviving should re-marry, the deceased (sic) interest is due and payable to his or her heirs.' " The survivor did remarry, and immediately closed up his wife's estate, under the provision of the will cited above, and paid the remaining portion of his wife's estate to her heirs as provided in the will. That case contemplated the situation which happened, and is not in any sense analogous to the instant one.

I am in full agreement with the statement that in a suit to enforce an oral agreement within the statute of frauds, on the ground of part performance, the part performance must refer to, result from, or be in pursuance of the oral contract sought to be enforced and not from some other limitation. In this case, however, I am unable to see any basis to account for the performance herein except on that of performance of the oral contract. It seems apparent to me that the only basis on which Frank Middaugh would have left one-half of his estate to his wife's nieces and nephews was pursuant to the contract.

I would say that the rule to be applied is that set forth in our opinion in Overlander v. Ware, 102 Neb. 216, 166 N. W. 611, as follows: "In considering cases of this character, where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satisfactory and unequivocal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfactory evidence, they are not enforceable unless there has been such performance as the law requires. The thing done, constituting performance, must be such as is referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that the claimant would not have

done unless on account of the agreement and with the direct view to its performance—so that nonperformance by the other party would amount to fraud upon him." The performance herein to me can only be referred to the contract sought to be enforced.

I am in full agreement with appellants that the cases of Brown v Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. N. S. 1196, and Mack v. Swanson, 140 Neb. 295, 299 N. W. 543, support their position. I certainly do not believe that we should overrule Brown v. Webster, *supra*, which has been the law in this jurisdiction for more than 50 years, which 53 years ago followed the majority rule in the country, and which still is the rule in a vast majority of the jurisdictions, without some compelling reasons.

Brown v. Webster, *supra*, came to this court on a demurrer to the petition. The court did not anticipate the evidence, and the opinion is not mere dicta. It followed the rule that a demurrer admits all facts well pleaded. Assuming the facts as established, for the purposes of the demurrer, it laid down the law applicable to those facts. The following discussion and authorities from that case may be of interest here: "It is not a question, therefore, of whether or not the execution of the wills aided an oral contract; the question is, were the wills an integral and important part of the contract? We held that they were, and that from the moment the wills were executed the contract no longer rested entirely in parol. We also think it would be doing violence to every rule of equity to hold that the contract of each, of which the will was a part, was not a good consideration for the contract of the other. We think the consideration of each was both a good and valuable consideration; but, even if it were to be held that it did not constitute a valuable consideration, in the sense that no money was paid or property delivered or personal services performed by the one to or for the other, the contract would still be enforceable for the reason that it was supported

by a good consideration. Conceding that a contract by A to make a will in favor of B, that upon A's death he would leave all of his property to B, could not be enforced by B, as against the creditors of A, or as against those having a superior equity to B, yet, if there are no creditors and no one possessing superior equities to B, then a good consideration would be sufficient to entitle B to enforce the contract after A's death. Parsell v. Stryker, 41 N. Y. 480, 485; Underhill, Law of Wills, sec. 285. That a contract to devise real estate, where there has been performance by the promisee, is good in this state is settled in this court by Kofka v. Rosicky, 41 Neb. 328; Teske v. Dittberner, 65 Neb. 167, 70 Neb. 544; Peterson v. Estate of Bauer, 76 Neb. 652; Peterson v. Bauer, 83 Neb. 405; Pemberton v. Heirs of Pemberton, 76 Neb. 669; Harrison v. Harrison, 80 Neb. 103; Cobb v. Macfarland, 87 Neb. 408; Johnson v. Riseberg, ante, p. 217. That the execution of the wills satisfied the statute of frauds, see Brinker v. Brinker, 7 Pa. St. 53; Shroyer v. Smith, 204 Pa. St. 310; Keith v. Miller, 174 Ill. 64; Bruce v. Moon, 57 S. Car. 60, 35 S. E. 415. That the will of deceased was not, in equity, ambulatory or revokable (sic), see Teske v. Dittberner, 70 Neb. 544, where, in the seventh paragraph of the syllabus, we held: 'A contract to leave property by will is not ambulatory or revocable, as being testamentary in character, after the promisee has performed his part of the contract.' See, also, Bolman v. Overall, 80 Ala. 451; Johnson v. Hubbell, 2 Stock. Ch. (N. J.) 332; and Rivers v. Executors of Rivers, 3 Desaus. Eq. (S. Car.) 190, where it is said: 'By this agreement (to make a will of a particular tenor) he has renounced that absolute power of disposing of his estate at his pleasure, or even at his caprice, with which the law had clothed him; and I cannot doubt that he could bind himself to do so. * * * A man may renounce every power, benefit, or right, which the laws give him, and he would be bound by his agreement to do so, provided the agreement be entered into fairly, without

surprise, imposition, or fraud, and that it be reasonable and moral. * * * It appears to me that to make a will in a particular way, on proper considerations, is as much a subject of contract as any other; and he who makes a contract on this subject is as much bound thereby as he would be by any agreement on any other subject.' See, also, Bruce v. Moon, 57 S. Car. 60, 71; Parsell v. Stryker, 41 N. Y. 480, 486, 487. The contention that plaintiff parted with nothing, that the manner in which she permitted her husband to manage and control her estate and take title to property in his own name and hold the same and the proceeds from sales thereof, after the execution of the contract, was not different from the manner in which she had permitted him to handle her property prior to its execution, does not impress us as being of any force. The fact is admitted that, at all times after the execution of the contract, she in good faith relied upon it by permitting her will to remain as originally executed, without any attempt at modification or revocation."

Supplementing the quotation from Mack v. Swanson, 140 Neb. 295, 299 N. W. 543, in the opinion, I quote the following: "The question to be determined on appeal is the sufficiency of the evidence to prove an oral agreement by husband and wife to make reciprocal wills. After those instruments were duly and legally executed by both husband and wife without fraud of any kind, a prior oral contract to do so was provable without direct evidence. Both husband and wife were competent to make testamentary disposition of their property. What they in fact did in that particular is evidence of their previous mutual voluntary purpose. Circumstances may evidence a prior, oral agreement for reciprocal wills as well as direct testimony. * * * These wills were drawn at the same time, the only difference between them being changes in names and in references of each to the other. They were signed and witnessed by the same persons at the same time and place a few days after they were

drawn. The witnesses to the wills certified that the husband declared in their presence and hearing that the instrument signed by him was his last will and testament and that his wife made a similar declaration. The executed wills were kept in a strong box accessible to both until after the death of her husband. The wills themselves, the definite purpose stated therein as to where the residue of the property of both should go upon the death of both and the surrounding circumstances, evidence a previous mutual agreement by husband and wife to make the irrevocable testamentary disposition of their property disclosed by the written instruments of identical import. Friends of William F. Mack testified he had at times expressed the purpose of himself and wife to make reciprocal wills, leaving the residue of their property upon the death of both to the heirs of both. The attorney who drew the reciprocal wills testified to the effect that William F. Mack and wife came to his office together; that the husband explained in the presence and hearing of the three of them the mutual plan to leave the residue of their property to the heirs of both, and that pursuant to directions he dictated the wills to a stenographer who read them to both husband and wife and that they both expressed satisfaction therewith. The evidence and circumstances summarized are uncontradicted. For the purposes of equity the oral agreement is fully established. For such purposes the oral agreement and the reciprocal wills should be treated as different parts of a single contract. The mutual promises of the parties amount to sufficient considerations. Performance of the oral contract by both parties during the remainder of the husband's life and the mutual writings pursuant to such oral contract clear the transactions from the statute of frauds. The rules of law and equity observed herein are well established in this state as well as in many other jurisdictions. Brown v. Webster, 90 Neb. 591, 134 N. W. 185, and the cases cited therein."

I cannot agree with the conclusion in the proposed

opinion that the oral agreement sought to be enforced is barred by the statute of frauds. In this finding the trial court erred.

BROWER, J., joins in this dissent.