STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. FRED H. RICHARDS, JR.,
RESPONDENT.
STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR
ASSOCIATION, RELATOR, V. BERNARD T. SCHAFERSMAN,
RESPONDENT.

159 N. W. 2d 317

Filed June 7, 1968.   Nos. 36653, 36654.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for relator.

Robert D. Mullin, for respondents.

Charles H. Yost, Lawrence H. Yost, and William G. Line, for amici curiae.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

In these disciplinary proceedings against two lawyers, relator alleged that respondents had violated Canon 38, Canons of Professional Ethics, which reads:   "A lawyer should accept no compensation, commissions, rebates or other advantages from others without the knowledge and consent of his client after full disclosure."   Evidentiary hearings were followed by findings of fact and conclusions of law against respondents on all counts of the complaints.   Respondents excepted to the report of the referee.

Contentions that respondents obeyed Canon 38 run as follows: (1) The canon is ambiguous. (2) Respondents' conduct was harmless. (3) Respondents earned the fees in question. (4) Respondents had no willful intent to bring the profession into disrepute, to perpetrate fraud on the courts, or to corrupt the administration of justice.

The referee's findings focus on compensation paid by an auctioneer firm in connection with sales of property in divorce suits and deceaseds' estates. In 1959 respondent Richards, executor of a deceased's estate valued at $34,710.38, employed the firm of Taylor and Martin to auction the deceased's residence. After the sale Taylor and Martin paid him $329.83 which represented 50 percent of the auctioneer's net commission. The payment was not disclosed to any of the 14 beneficiaries of the estate or to the court. The court allowed Richards an executor's fee of $467.21 and an attorney's fee of $1,042.76.

Richards represented the executors and proponents of the will of Elizabeth Middaugh, deceased, whose estate exceeded $281,000. There was considerable litigation. See, Kimmel v. Roberts, 179 Neb. 8, 136 N. W. 2d 208; Kimmel v. Roberts, 179 Neb. 25, 136 N. W. 2d 217. In September 1964, Richards and counsel for contestants stipulated that the special administrator hire Taylor and Martin to auction the real estate. On the sale a commission of 5 percent, the customary rate, was paid to Taylor and Martin. In January 1965, Taylor and Martin paid Richards $2,710.21 which represented 50 percent of the net commission. In November the court allowed Richards a minimum fee of $6,787.76 and an additional fee of $5,670.61 for extraordinary services. The former special administrator, the beneficiaries, and the court had no knowledge of the Taylor and Martin payment to Richards.

As executor with power of sale under a deceased's will, Richards stipulated with others for auction of estate property by Taylor and Martin. In August 1965, Taylor and Martin paid Richards $122.35 which repre-

sented 50 percent of the net commission. While the court and other parties interested in the estate knew nothing of the payment, Richards took executor's and attorney's fees allowed by the court.

In 1965 Richards represented the wife in a divorce suit. Pursuant to a stipulation approved by the court, property was auctioned by Taylor and Martin which was paid a 5 percent commission. Richards received $397.35, 50 percent of the net commission, from Taylor and Martin without disclosure to plaintiff, defendant, or the court. He also received a fee for representing the wife.

Respondent Schafersman, a partner of Richards, was paid $69.25 and $1,570.50 by Taylor and Martin on January 14, 1964. Each sum represented 50 percent of the auctioneer's net commission on sale of property in a deceased's estate. Schafersman, who was coexecutor of one of the estates and executor of the other, received executor's and attorney's fees. His coexecutor, the beneficiaries, and the court did not know about the split of Taylor and Martin's commission.

In July 1964, Taylor and Martin paid Schafersman $299.37, 50 percent of the auctioneer's net commission on sale of property in a deceased's estate. Schafersman, who was counsel for the personal representative of the estate, also received an attorney's fee allowed by the court. The payment by Taylor and Martin was not disclosed to the beneficiaries of the estate or to the court.

Schafersman was coexecutor of a deceased's estate, the will directing sale of the real estate. Taylor and Martin received an auctioneer's commission on the sale, and the firm paid Schafersman $1,863.90, 50 percent of the net commission. Schafersman received executor's and attorney's fees without disclosing his other compensation to his coexecutor, the beneficiaries, or the court.

Schafersman was counsel for plaintiff in a divorce suit in which the court ordered a sale of the real estate. He was also administrator c.t.a. of a deceased's estate with property to be sold. At both sales Taylor and

Martin was the auctioneer. On September 29, 1965, it paid Schafersman $287.86 and $395.75, 50 percent of the net commissions. He took a fee in each case without disclosing his other compensation.

In nearly every transaction Richards or Schafersman participated in the discussions that led to employment of Taylor and Martin. Many of those contracts were the handiwork of respondents. The findings leave it open whether Taylor and Martin's employment preceded or followed the Taylor and Martin—respondent contract which called for 50 percent of the net commission. Respondents rendered services in connection with the sales. The value of the services measured either by the contract or by the actual compensation was debatable, the referee making no finding. The good faith of Taylor and Martin was unquestioned.

Canon 38 is clear enough. We cannot square the ambiguity argument with a rule generally applicable to administration of trusts. "The trustee violates his duty to the beneficiary if he accepts for himself from a third person any bonus or commission for any act done by him in connection with the administration of the trust. * * * if he is employed by an insurance company with which he insures trust property, receiving as compensation a commission for placing the insurance, he is accountable for the commission." Restatement, Trusts 2d, § 170 (1), Comment o, p. 370.

Two opinions by the A.B.A. Committee on Professional Ethics (1967 Ed.), are significant. "It is improper for an attorney to retain one-fourth of the charge for an abstract examination and forward three-fourths of the charge to an abstract company which performs the abstract examination unless such an arrangement is with the full knowledge and consent of the client." Op. 196, p. 477. "An attorney may not receive a commission for recommending or selling title insurance without fully disclosing to the client his financial interests in the transaction." Op. 304, p. 667.

A lawyer may violate Canon 38, although he causes no harm to his client. The truth that an undisclosed rebate may not increase the cost to the client has a surface appeal. The canon rests, however, on another truth. Anticipation of a rebate from a company may tempt the lawyer to recommend that company to his client. See, Abbot, "Some Actual Problems of Professional Ethics," 15 Harv. L. Rev. 714; Restatement, Trusts 2d, § 170 (1), Comment o, p. 370.

A former attorney for executors and trustees in In re Clarke's Estate, 12 N. Y. 2d 183, 188 N. E. 2d 128, was denied compensation and held accountable for the undisclosed rebate of 10 percent of a broker's commission on sale of estate property. The court said: "The agreement * * * put the attorney in a position of divided loyalty. An attorney for a fiduciary has the same duty of undivided loyalty to the *cestui* as the fiduciary himself * * *. And it matters not that no actual harm was done the estate; the vice is placing himself in a position where self interest presents a second master to serve."

Respondents were under a duty of disclosure to the court. "When a lawyer seeks a fee from the court in a matter in which a court has an interest such as * * * executors * * *, and indeed any situation in which an application must be made to a court for a fee * * *, the attorney must make a complete disclosure of all the circumstances. He must disclose * * * whether or not he received or will receive compensation or other direct or indirect benefits of any kind from the client or from others, and any other fact * * * bearing on the propriety of the compensation he seeks." Wise, Legal Ethics, p. 122. See, also, Golden v. Taft, 344 Mass. 152, 181 N. E. 2d 544.

The foregoing rationale exposes a weakness in the argument that the fees received from Taylor and Martin were earned. Respondents do not assert that they received inadequate compensation. Isolating the transaction, they assume that evidence of their services shows

the consideration, the absence of gratuity. The assumption is erroneous. Client and court with no knowledge of the Taylor and Martin—respondent contract might well consider such services in connection with the allowance of fees. It was not for respondents to decide that they were duplicating no service, that they might properly accept the allowance without disclosure.

Willfulness or wrongful intent may be proved by circumstantial evidence. Zitny v. State Bar of California, 64 Cal. 2d 787, 51 Cal. Rptr. 825, 415 P. 2d 521. The referee's report manifests reliance on circumstantial evidence and rejection of respondents' testimony to good faith and undisputed evidence of good reputation. Respondents deliberately withheld information in spite of their duty to disclose. Personal interest and fiduciary duty were inextricable, and the inducement was substantial. The referee, a former judge with wide experience, declined to ascribe the pattern of nondisclosure to inexperience, misunderstanding, forgetfulness, or negligence. The report itself convinces us that he made an impartial, painstaking search for the truth. The evidence fully sustaining his findings, we confirm the report.

Richards has been practicing law since 1923, and Schafersman, since 1947. Their reputations for honesty and ethical practice, apart from the conduct in question, are good. We find that justice will be served by suspending them from further practice of law for a period of 1 year from the effective date of our judgment. If a respondent affirmatively shows compliance with the order of suspension at the expiration of the 1-year period, he will then be reinstated. In the event a respondent fails to comply with the order of suspension, his suspension shall become permanent.

Judgment of suspension accordingly. All costs are taxed to respondents.

JUDGMENT OF SUSPENSION.