FRANCES MCKINNON, APPELLANT, V. TED BAKER, PERSONAL
REPRESENTATIVE OF THE ESTATE OF ANNA LUELLA VAN PELT,
DECEASED, ET AL., APPELLEES.

370 N.W.2d 492

Filed July 5, 1985.    No. 84-083.

Brian Cook of O'Brien, Huenergardt & Cook, for appellant.

George P. Burke of Van Steenberg, Myers & Burke, for appellees.

KRIVOSHA, C.J., WHITE, and GRANT, JJ., and BRODKEY, J., Retired, and RIST, D.J.

RIST, D.J.

This is an action in which Frances McKinnon, plaintiff-appellant, sought performance of a contract respecting reciprocal wills between Lester M. Van Pelt and Anna Luella Van Pelt and the imposition of a constructive trust thereunder upon certain real estate devised by Anna. The defendants are the personal representatives of Anna's estate and the residuary beneficiaries under her last will and testament. The trial court dismissed plaintiff's petition and quieted title to the interest in real estate here involved in the personal representatives of Anna's estate. Plaintiff has appealed, claiming in substance that the trial court failed to properly determine the meaning and effect of the contract involved.

Lester and Anna were married in 1938, it being a subsequent marriage for each. Each had children by a prior marriage. The plaintiff is a daughter of Lester by a prior marriage.

In 1952, subsequent to their marriage, Lester and Anna acquired as tenants in common a residential property which they occupied as their home and described as Lot 4, Rodman Court Addition to the City of Kimball, Kimball County, Nebraska.

In 1957 Lester and Anna entered into a written contract regarding the disposition of their property, including particularly the making of what were described in the contract as reciprocal wills. The 1957 will of Lester executed pursuant to the contract provided in substance that at his death the residence property here involved should go to Anna for life, remainder to the plaintiff; and if Anna predeceased him, plaintiff was to receive such property. Anna's will executed pursuant to the contract provided that if Lester predeceased her, said property was to go to the plaintiff.

Lester died in 1977, and his 1957 will was probated. Anna died in 1981 but had, in 1978 and subsequent to Lester's death, executed a new will leaving the residue of her estate, including the interest in real estate here involved, to her great-grandchildren. This will was admitted to probate. It is as a result of this latter will that plaintiff sought to have the 1957 agreement of the parties enforced in favor of the disposition to her as contained in Anna's 1957 will, and the imposition of a constructive trust upon this interest in real estate to effect the same.

The 1957 contract between Lester and Anna and its meaning and effect are the principal issues before us. The contract began with a number of recitals, those material to this case being:

> Whereas, both parties, at this time, desire to execute reciprocal wills devising and bequeathing their respective separate property upon their respective deaths free from any claim of the other except as shall be provided in said wills; and
>
> Whereas, both parties have mutually agreed and do now agree that the distribution of their respective property shall be made in accordance *with the terms of this agreement and said reciprocal wills*.

(Emphasis supplied.)

Paragraph 12 of the contract proper provided:

> Each party shall contemporaneously with the execution of this agreement, execute his and her Last Will and Testament, a copy of which is hereto attached marked Exhibits A and B, respectively. It is mutually agreed *that so long as the other shall live,* neither of us will revoke nor destroy either of said wills or make any other will or codicil without the full consent and agreement of the other.

(Emphasis supplied.) The 1957 wills executed by both Lester and Anna were those, copies of which were attached to the contract.

The trial court held that paragraph 12 of the contract was unambiguous and permitted Anna to modify her will after Lester's death and that the recitals could not be used to vary this contract provision. Plaintiff asserts this is in error; that the recitals must be treated as an integral part of the contract; that the reference to reciprocal wills in the recital portion of the contract carries with it a connotation that a contract for such wills is enforceable; that such wills may not be varied unless by consent of the parties; that a reading of the contract as a whole, including the recitals, shows an intention of the parties that the wills provided for in the contract could not be varied without mutual consent; and that paragraph 12 is merely to tie up loose ends which might otherwise exist and defeat the intention of the parties.

Before dealing with plaintiff's position, we wish first to dispose of an argument of defendants that the contract here involved is an invalid postnuptial contract. It is not. It is a proper contract to make reciprocal or mutual wills, and such contracts are valid in Nebraska. *Brown v. Webster,* 90 Neb. 591, 134 N.W. 185 (1912); *Wyrick v. Wyrick,* 162 Neb. 105, 75 N.W.2d 376 (1956); *Eagan v. Hall,* 159 Neb. 537, 68 N.W.2d 147 (1955). The issue before us is what the contract means.

We cannot agree with plaintiff's characterization of the contract as being one providing for irrevocable reciprocal wills. While one may question the use of the word *reciprocal* as being an accurate description of the wills provided in the contract, it being more likely that they are *mutual* wills as that term is usually defined, the fact is that the parties could and did contract for the making of the wills attached to the contract.

The problem initially is what effect, if any, the recitals of the contract have upon the contract provisions proper, and in particular paragraph 12.

We conclude first that contract recitals have a limited value in the construction of a contract. They are generally background statements and do not ordinarily form any part of the real agreement. If the agreement proper is ambiguous, then the recitals may be of value in construing the same. Otherwise, the language of the contract is controlling. As stated in 17 Am. Jur. 2d *Contracts* § 268 at 676 (1964), "[I]f the recitals are ambiguous and the operative part is clear, the operative part must prevail. If both the recitals and the operative part are clear, but they are inconsistent with each other, the operative part must control." See, also, 17A C.J.S. *Contracts* § 314 (1963). This court has followed this rule as to unambiguous contract clauses in similar situations. See *Strickland v. Omaha Nat. Bank*, 181 Neb. 478, 149 N.W.2d 344 (1967).

We find the language of paragraph 12 to be unambiguous as to when the wills described therein could not be revoked or modified. The language that "so long as the other shall live, neither of us will revoke or destroy either of said wills or make any other will or codicil without . . . consent" is clear and requires no explanation by reference to any recitals. The limit on nonconsensual changes ended at the death of one of the parties. Anna had a right to modify her will after Lester's death. It may further be said that execution of reciprocal or mutual wills, without more, can be no bar to their modification or revocation even when both parties are aware of the terms of each will. *Kimmel v. Roberts*, 179 Neb. 8, 136 N.W.2d 208 (1965). It requires a contractual agreement to prohibit such changes. Here, there is a contract, but the contractual limitation on change is limited to the joint lives of the testators. After that, no change limitation exists.

We, therefore, find that the trial court was correct in its decision that Anna had the right to modify her will and in dismissing plaintiff's petition. The action of the trial court is affirmed.

AFFIRMED.

WHITE, J., dissenting.

It is a fundamental tenet of contract law that a contract must be read as a whole. In construing a written contract for the purpose of ascertaining the intention of the parties, the instrument must be considered as a whole, the words given their ordinary and popularly accepted meaning, and the intent of the parties must be derived from the four corners of the instrument. *Long v. Magnolia Petroleum Co.*, 166 Neb. 410, 89 N.W.2d 245 (1958); *Westbrook v. Masonic Manor,* 185 Neb. 660, 178 N.W.2d 280 (1970). Also, the interpretation given to a contract by the parties themselves while engaged in the performance of it is one of the best indications of true intent and should be given great, if not controlling, influence. *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983).

From the terms of the agreement in this case, it is clear that the intent of the parties was to execute reciprocal wills contemporaneously with the execution of the agreement. The parties agreed that their property would be distributed by the terms of these reciprocal wills and the agreement. As the agreement provides, "both parties have mutually agreed and do now agree that the distribution of their respective property shall be made in accordance with the terms of this agreement and said reciprocal wills." As I read the instrument, this clause must be interpreted as a central part of the agreement. Paragraph 12 merely supplies additional terms. The respective 1957 wills and the agreement clearly show that the parties intended that the house owned by Mr. and Mrs. Van Pelt as tenants in common would ultimately pass to Frances McKinnon in fee simple. Mrs. Van Pelt breached this agreement in 1976 and 1978 by revoking her 1957 will and devising her interest in the house first to her grandchildren and then to her great-grandchildren.

I would reverse.